**GRANT PRIDECO, INC. and Aggregate Plant Products Co., Appellants**

v.

**EMPEIRIA CONNER L.L.C., Empeiria Conner II L.L.C., Aubrey Conner, Legg Mason SBIC Mezzanine Fund, L.P., AEA Mezzanine Fund, L.P., AEA Mezzanine (Unleveraged) Fund, L.P., Paul Frontier Holdings, L.P., Joe Fiamingo, Wes Dehaven, Alex Suarez, and Empeiria Conner L.L.C., in its capacity as the seller representative, Appellees**

NO. 14–13–00644–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinions filed March 19, 2015.

J.D. Page, Eileen F. O'Neill, Houston, TX, for Appellants.

Kerry Peterson, Charles Christopher Groves, Dallas, TX, for Appellees.

Panel consists of Chief Justice Frost and Justices Jamison and Wise.

## OPINION

Martha Hill Jamison, Justice

The parties to this appeal dispute the meaning of a contractual indemnity provision. The trial judge granted summary judgment agreeing with appellees' interpretation. We agree with appellants' interpretation and, therefore, reverse. Concluding, however, that appellants have not established as a matter of law that they are entitled to indemnification, we remand for further proceedings consistent with this opinion.

### Background

Empeiria Conner L.L.C., Empeiria Conner II L.L.C., Aubrey Conner, Legg Mason SBIC Mezzanine Fund, L.P., AEA Mezzanine Fund, L.P., AEA Mezzanine (Unleveraged) Fund, L.P., Paul Frontier Holdings, L.P., Joe Fiamingo, Wes Dehaven, Alex Suarez, and Empeiria Conner L.L.C., in its capacity as the seller representative (collectively, "Empeiria") and others entered into a Stock Purchase Agreement with Grant Prideco, Inc.[1] Under the Stock Purchase Agreement, Grant Prideco purchased all of the outstanding capital stock, warrants, and options of Conner Steel Products Holdings, Co., a company that owned all of the issued and outstanding capital stock of Conner Steel Products, Inc. The latter company owned all of the issued and outstanding capital stock of appellant Aggregate Plant Products Company (APPCO).

1. For ease of reference, we refer to appellees in the singular.

APPCO manufactures heavy equipment, including multi-sanders used in oil and gas operations. The Stock Purchase Agreement contains various indemnity provisions, including an agreement by Empeiria to indemnify Grant Prideco and others as to losses based upon, arising out of, or relating to certain products liability claims.[2] In March 2012, Jose Lara filed suit against APPCO and others in Winkler County, Texas, asserting various products liability claims allegedly arising out of severe injuries Lara suffered while working with a multi-sander allegedly manufactured, designed, marketed, and distributed by APPCO and others.

Grant Prideco and APPCO (collectively, "Grant Prideco") sent a timely demand letter to Empeiria seeking indemnity from the claims, demands, and fees and costs of defense or settlement "arising out of or related to Mr. Lara's lawsuit."[3] Empeiria denied Grant Prideco's demand for indemnity, asserting that Lara's claims do not fall within the scope of any indemnity provision in the Stock Purchase Agreement. Grant Prideco filed suit against Empeiria, alleging that it breached its indemnity obligations under the Stock Purchase Agreement, and seeking "a declaration that [Grant Prideco is] entitled to recover all money held in escrow," contract damages, and attorney's fees.[4] Empeiria filed counterclaims seeking declaratory relief and attorney's fees.

Empeiria filed a traditional summary-judgment motion on the bases that "the underlying cause of action for negligence accrued after the sale of [APPCO]" and "[Empeiria is] not liable to indemnify [Grant Prideco] for claims arising after the sale."[5] Grant Prideco filed a motion for partial summary judgment, seeking a declaratory judgment that it is entitled to indemnity from Empeiria as to Lara's claims and for attorney's fees. The trial court granted in part and denied in part Empeiria's summary-judgment motion and denied Grant Prideco's motion for partial summary judgment. In its summary-judgment order, the trial court declared that "the facts, events, and circumstances with respect to [Lara's claims] did not arise prior to the Closing Date" and thus Empeiria is not required to indemnify Grant Prideco under the Stock Purchase Agreement. The trial court denied Empeiria's request for attorney's fees.

### Discussion

In a single issue, Grant Prideco asserts that the trial court erred in granting Empeiria's summary-judgment motion and in denying its motion for partial summary judgment. Grant Prideco did not seek a final judgment. However, because Grant Prideco and Empeiria moved for summary judgment on the same issue (both seeking a declaration regarding whether Empeiria was required to indemnify Grant Prideco), we may review the trial court's denial of Grant Prideco's summary-judgment mo-

---

2. The indemnity provision at issue is section 10.2(c). *See infra* pp. 160–61.

3. As with appellees, we refer to appellants in the singular.

4. In conjunction with the stock purchase, the parties entered into an Escrow Agreement. Pursuant to section 4 of the Escrow Agreement, an Escrow Fund of $9.5 million was established for the purpose of paying claims

for indemnification. Empeiria claimed Grant Prideco breached the Escrow Agreement by failing to release funds.

5. Grant Prideco brought only a breach of contract claim, but in its prayer sought the above-referenced declaration in addition to monetary damages. Empeiria moved for summary judgment as to Grant Prideco's breach claim but did not otherwise object to Grant Prideco's request for declaratory relief.

tion. *See FDIC v. Lenk,* 361 S.W.3d 602, 611–12 (Tex.2012); *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.,* 417 S.W.3d 656, 659, 664 (Tex.App.—Houston [14th Dist.] 2013, pet. denied).

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish the movant's right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007).

■ When, as in this case, the parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, we may consider the propriety of the denial as well as the grant. *See Lidawi v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 729 (Tex.App.—Houston [14th Dist.] 2003, no pet.). If the issue raised is based on undisputed and unambiguous facts, we may determine the question presented as a matter of law. *See id.* We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered. *See id.* If, however, resolution of the issues rests on disputed facts, summary judgment is inappropriate, and we should

reverse and remand for further proceedings. *See id.* at 729–30.

■ Grant Prideco argues that Lara's claims fall within the scope of the indemnity provision so that, as a matter of law, Empeiria must indemnify Grant Prideco as to these claims. Conversely, Empeiria argues that Lara's claims do not fall within the scope of that provision so that, as a matter of law, Empeiria has no obligation to indemnify Grant Prideco as to these claims. We construe indemnity agreements strictly under the usual principles of contract interpretation to give effect to the parties' intent as expressed in the agreement. *See Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex.2000); *E.I. Du Pont De Nemours & Co. v. Shell Oil Co.,* 259 S.W.3d 800, 805 (Tex.App.—Houston [1st Dist.] 2007, pet. denied). We must give terms in an indemnity agreement their plain, ordinary, and generally accepted meaning unless the agreement indicates otherwise. *Lehmann v. Har–Con Corp.,* 76 S.W.3d 555, 562 (Tex.App.—Houston [14th Dist.] 2002, no pet.). An indemnity agreement is unambiguous if it can be given a definite or certain legal meaning, and we will construe an unambiguous indemnity agreement as a matter of law. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *E.I. Du Pont De Nemours & Co.,* 259 S.W.3d at 805.

The provision in question is section 10.2 of the Stock Purchase Agreement, which provides in pertinent part as follows:

**Section 10.2** *Indemnification by the Sellers.* Subject to the limitations set forth in this *Article X,* including without limitation *Section 10.7,* each Seller hereby (on a joint and several basis with the other Sellers except as set forth below) agrees to and shall defend, indemnify and hold harmless the Buyer and each of the Buyer's subsidiaries, Affiliates and parents, successors and permitted

assigns, and each of their respective partners, officers, directors, employees and their respective heirs and legal and personal representatives (collectively, the *"Buyer's Indemnified Persons"*) from and against, and shall reimburse the Buyer's Indemnified Persons for, any and all Losses to the extent such Losses are based upon, arise out of, or are related to: ...

(c) any Claims of Product Liability for which the facts, events and circumstances with respect to such Products Liability Claim first arose prior to the Closing Date ("Product Liability Claim")[.]

The closing date for the Stock Purchase Agreement was May 25, 2011, and Lara alleges that he sustained his injuries on or about September 1, 2011. The parties do not dispute that at least some of Lara's claims are "Claims of Product Liability."[6]

■ The main issue is whether Lara's claims are claims "for which the facts, events and circumstances with respect to such [claim] first arose prior to the Closing Date." Grant Prideco contends that this indemnity applies to "any Claims of Product Liability" in which the allegedly *actionable conduct* occurred before the Closing Date. Empeiria contends that this indemnity applies to "any Claims of Product Liability" that *accrued* before the Closing Date.

The everyday words "facts," "events," "circumstances" and "arose" are not defined in the Stock Purchase Agreement. Nothing in the Stock Purchase Agreement suggests that these ordinary words are used in a technical sense or in any way other than to convey their ordinary and generally accepted meaning, so we give these words that meaning. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005). The phrase "the facts, events and circumstances with respect to such ... Claim" has a broad scope that would encompass the allegedly actionable conduct that is the basis of Lara's claims, the harm or injury allegedly sustained as a result of that conduct, and other facts, events, and circumstances with respect to such a claim.

We do not agree with the interpretation of the contract put forward by Empeiria and apparently found by the trial judge: that the disputed paragraph applies only to claims that "accrued" before the closing date. If the parties had intended to permit indemnification only for legal causes of action that had "accrued" prior to the closing date, they easily could have used that term, which has a specific legal meaning, in the Stock Purchase Agreement. Appellees argue that one of the synonyms for "accrue" is "arise" which is the present tense of "arose." We find this argument unpersuasive.[7]

The words "arising out of" have been interpreted by courts as "broad, general,

---

**6.** The term "Product Liability" is defined in section 4.27(b) of the Stock Purchase Agreement, and the term "Claims" is defined in section 1.1 of the Stock Purchase Agreement.

**7.** Empeiria also argues that no manufacturing company could ever be sold if Grant Prideco's interpretation of the indemnity language is upheld, citing *NuStar Energy L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2013, no writ). That case, however, simply states that, in in-

terpreting a contract, we bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Id.* at 466. We do not interpret *NuStar* to endorse setting aside well-established principles of contract interpretation. Contract interpretation principles limit our analysis to the intent of the parties as expressed in the agreement. *See E.I. Du Pont De Nemours & Co.*, 259 S.W.3d at 805.

and comprehensive terms effecting broad coverage" in that the words are "understood to mean originating from, having its origin in, growing out of, or flowing from."[8] *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir.1998); *see also Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 54 (Tex.2011); *Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773, 779 (Tex.App.—Corpus Christi 2002, no pet.). Black's Law Dictionary similarly defines "arise," in relevant part, as "[t]o originate[,] to stem (from)[,]" and "[t]o result (from)." *Black's Law Dictionary* 129 (10th ed.2014). "Accrue," although a related term, is more narrow. In Texas jurisprudence, "accrue" means that "facts have come into existence that authorize a claimant to seek a judicial remedy." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). A judicial remedy is not available until facts, events, and circumstances result in a cognizable injury. *See Rice v. Louis A. Williams & Assocs., Inc.*, 86 S.W.3d 329, 337 (Tex.App.—Texarkana 2002, pet. denied) (discussing "legal injury rule" and noting that causes of action generally accrue when plaintiff is injured); *see also Reese v. Parker*, 742 S.W.2d 793, 797 (Tex.App.—Houston [14th Dist.] 1987, no writ) ("A cause of action will then accrue only when the plaintiff's legally protected interest has been invaded."). Thus, when "facts, events and circumstances arise" is a broader concept than when a claim accrues.

■ We conclude that Empeiria did not establish as a matter of law that the phrase "first arose" in the indemnity clause means "accrued." Empeiria did not present conclusive evidence of when the facts, events, and circumstances with respect to Lara's claims first arose.[9] Accordingly, the trial court erred in finding as a matter of law that the facts, events, and circumstances made the basis of Lara's claims did not arise prior to the closing date, and Empeiria is not required to indemnify Grant Prideco. Thus, the trial court erred in granting Empeiria's summary-judgment motion on those bases.

Similarly, although Grant Prideco established as a matter of law that the language "first arose" in the indemnity clause is broader than "accrued," Grant Prideco did not present conclusive evidence of when the facts, events, and circumstances with respect to Lara's claims first arose and accordingly did not establish as a matter of law that it was entitled to indemnification *from Empeiria*.[10] Thus, the trial court did

---

**8.** A claimant must commence a products liability action against a manufacturer or seller of certain manufacturing equipment before the end of 15 years after the date of sale of the equipment by the defendant. Tex. Civ. Prac. & Rem. Code § 16.012 (b). Thus, a manufacturer may be held responsible for long-ago activities.

**9.** Lara alleges, among other things, that he was injured when he was working with a multi-sander manufactured, designed, marketed, and distributed by APPCO and others. Empeiria presented no evidence of when the multi-sander was "manufactured, designed, marketed, and distributed" or its condition at that time.

**10.** It is undisputed that the Lara lawsuit was filed after the closing date. The record does not reveal whether the alleged "facts, events and circumstances" "first arose" prior to the closing date, if Grant Prideco sustained a loss under the Stock Purchase Agreement, or if so, the amount of the loss. Grant Prideco's brief states, without record cite, that the equipment that allegedly injured Lara was designed and manufactured prior to 2001. Grant Prideco's summary judgment motion cited Empeiria's motion to support this argument. Empeiria's motion cited Lara's petition, but no evidence was presented on this issue. Unsupported argument is not evidence. *Green v. Brantley*, 11 S.W.3d 259, 264 (Tex.App.—Fort Worth 1999, pet. denied).

not err in denying Grant Prideco's summary-judgment motion.

## Conclusion

We conclude the trial court erred in granting Empeiria's summary-judgment motion, but did not err in denying Grant Prideco's summary-judgment motion. Because resolution of the issues rests on disputed facts, we reverse the trial court's judgment and remand this case to the trial court for proceedings consistent with this opinion. *See Lidawi,* 112 S.W.3d at 729–30.

(Frost, C.J., dissenting)

Kem Thompson Frost, Chief Justice, dissenting.

The main issue in this appeal is whether the language of a contractual indemnity provision is ambiguous. Both sides say its meaning is clear, yet they say it means different things. The trial court concluded that the defendants' interpretation is the unambiguous meaning of the provision. Today, the majority concludes that the plaintiffs' interpretation is the unambiguous meaning. None is correct. The provision's meaning is ambiguous.

### *Ambiguity forecloses summary judgment.*

When the meaning of a contractual provision is ambiguous, summary judgment is improper. Thus, the court should reverse the trial court's summary judgment and remand the case to the trial court so that the trier of fact may determine the true intent of the parties as to the scope of the indemnity provision. Only when a written instrument is worded so that it can be given a certain or definite legal meaning or

interpretation, may the court properly construe it as a matter of law. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996); *Dardas v. Fleming, Hovenkamp & Grayson, P.C.,* 194 S.W.3d 603, 611 (Tex.App.—Houston [14th Dist.] 2006, pet. denied). If the meaning of a disputed provision is uncertain and doubtful or if the provision is reasonably susceptible to more than one meaning, taking into consideration the circumstances present at the time of signing, then the provision is ambiguous and its meaning must be resolved by a finder of fact.[1] *See Lenape Res. Corp.,* 925 S.W.2d at 574.

In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the written instrument. *See id.* We need not strain to embrace rules of construction that would avoid ambiguity at all costs. *See id.* If section 10.2(c) of the Stock Purchase Agreement ("Agreement") is ambiguous, then the trial court erred in granting summary judgment because the interpretation of an ambiguous contract is a question for the finder of fact. *See Coker v. Coker,* 650 S.W.2d 391, 394–95 (Tex.1983). Although all parties argue that the relevant language is unambiguous, that does not prevent this court from concluding that the language is ambiguous. *See Watkins v. Krist Law Firm, P.C.,* No. 14–02–00291–CV, 2003 WL 21786173, at *3 (Tex.App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem.op.). Therefore, the threshold inquiry is whether the following language in section 10.2(c) of the Agreement is ambiguous: "any Claims of Product Liability for which the facts, events and circumstances with respect to

---

1. The record does not contain any evidence of circumstances present when the Stock Purchase Agreement was signed that would in-
form the inquiry as to whether the relevant language is ambiguous.

such Products Liability Claim first arose prior to the Closing Date."

Appellants/plaintiffs Grant Prideco, Inc. and Aggregate Plant Products Co. (hereinafter collectively the "Grant Prideco Parties") assert that the words "facts, events, and circumstances" have a broad meaning. The Grant Prideco Parties say that "fact" means "an actual occurrence," that an "event" is "something that happens," and that a "circumstances" is "a condition, fact, or event accompanying, conditioning, or determining another: an essential or inevitable concomitant." The Grant Prideco Parties argue that the indemnity provision requires the Empeiria Parties[2] to indemnify them because, "[b]ased on the plain meaning of these words, facts, events, and circumstances that relate to Mr. Lara's product liability claim arose before the Closing Date." By agreeing with the Grant Prideco Parties' interpretation of the provision, the majority concludes that this interpretation is certain and is the only reasonable interpretation of the indemnity language. *See Lenape Res. Corp.*, 925 S.W.2d at 574. It is not.

### *Unpacking the contractual language leaves the meaning unclear.*

The everyday words "facts," "events," and "circumstances" are not defined in the Agreement. Nothing in the Agreement suggests that these ordinary words are used in a technical sense or in any way other than to convey their ordinary and generally accepted meaning, so we must give these words that meaning. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005). The phrase "the facts, events and circumstances with respect to such Products Liability Claim" (hereinafter "Facts Phrase") has a broad scope that would encompass the allegedly actionable conduct that is the basis of the Products Liability Claim, the harm or injury allegedly sustained as a result of that conduct, and other facts, events, and circumstances with respect to such a claim. But, the use of the words "the" and "and" in the Facts Phrase suggests that it may mean "all of the facts, events and circumstances with respect to such Products Liability Claim" rather than simply any of the facts, events, or circumstances relating to a claim.

Construing the scope of this indemnity is made tough by the parties' use of the phrase "first arose."[3] In the context of this indemnity provision, the plain, ordinary, and generally accepted meaning of "first arose" is "first came into being."[4] *See* Merriam Webster's Collegiate Dictionary 66 (11th ed.2004) (defining in perti-

---

**2.** Appellees/defendants Empeiria Conner L.L.C., Empeiria Conner II L.L.C., Aubrey Conner, Legg Mason SBIC Mezzanine Fund, L.P., AEA Mezzanine Fund, L.P., AEA Mezzanine (Unleveraged) Fund, L.P., Paul Frontier Holdings, L.P., Joe Fiamingo, Wes Dehaven, Alex Suarez, and Empeiria Conner L.L.C., in its capacity as the seller representative are referred to in this opinion collectively as the "Empeiria Parties."

**3.** The majority cites several cases construing the phrase "arising out of," but the provision does not contain this phrase.

**4.** The Empeiria Parties assert that, though the word "accrual" does not appear in the Agree-

ment, a synonym for "accrue" is "arise," which is the present tense of "arose." Presuming that "arise" is a synonym for "accrue," this status does not change the function of the phrase "first arose" as modifying the Facts Phrase, not the phrase "any Claims of Product Liability." Nor does the arise-means-accrue construct mean that the parties agreed that the scope of the indemnity would be "any Claims of Product Liability for which the facts, events and circumstances with respect to such Products Liability Claim first accrued prior to the Closing Date." In any event, this language is not any clearer than the language contained in section 10.2(c) of the Agreement.

nent part "arise" to mean "to come into being or to attention"); *id.* 68 (stating that "arose" is the past tense "arise"). Whatever its scope, the Facts Phrase contains elements that happen at different points in time. Therefore, the meaning of "the facts, events and circumstances ... first arose" is uncertain. The use of the phrase "first arose" indicates a look into the past to determine when the subject came into being. But, if the subject is a set of facts, events, and circumstances that came into being over a span of time, it is unclear how one can determine when that subject came into being. The parties may have intended to refer to the point in time in which the first fact, event, or circumstance with respect to the claim came into being. If so, that raises the issue of the scope of the Facts Phrase. If an inventor first gets the idea for a product, it may be decades before the first product is ever sold, and even longer before the use of that product ever causes a harm or injury that may be the basis of a product-liability claim. If an APPCO employee had an idea for a product in April 2011, and if one of those products were sold in 2026, and an alleged defect in the product allegedly caused serious personal injury in 2036, would the idea for the product constitute a fact, event, or circumstance with respect to a product-liability claim based on that personal injury so that the claim falls within the scope of the indemnity?[5]

Even if the idea for the product is not within the scope of the Facts Phrase, it is not clear why the first instance of conduct alleged by the product-liability plaintiff to be actionable would not fall within the scope of this phrase. If it does, and if the phrase "first arose" refers to the first fact, event, or circumstance in this phrase to come into being, then at least some of Lara's claims would fall within the scope of the indemnity under section 10.2(c) of the Agreement.

Nonetheless, the use of "first arose," even though the phrase does not modify "any Claims of Product Liability" still may have been intended to refer to the accrual of the "Claim of Product Liability" in question. The Empeiria Parties argue that the language of section 10.2(c) is unambiguous and covers only "claims that had arisen prior to the closing date." Yet, the Empeiria Parties do not address what meaning, if any, should be given to the word "first." In addition, as the Grant Prideco Parties note, the Empeiria Parties' construction effectively gives no meaning to the words in the Facts Phrase. The parties may have intended "first arose prior to the Closing Date" to modify the Facts Phrase in a way that achieves the same scope of the indemnity that the Empeiria Parties push, but any such intent is unclear. One could hardly say that this scope is communicated by unambiguous language in the Agreement. None of the cases the parties cite involve the unusual language the parties put in section 10.2(c), so these cases do not compel the conclu-

---

5. The Grant Prideco Parties and the Empeiria Parties both assert that, under section 10.1 of the Agreement, written notice of section 10.2(c) indemnity claims must be made within eighteen months of the Closing Date. Nonetheless, an indemnity claim under section 10.2(c) falls under the unambiguous language of section 10.1(c), and therefore, written notice of such indemnity claims may be provided at any time until the applicable statute of limitations expires. The Grant Prideco Parties provided written notice of their indemnity claims under the Agreement within eighteen months of the Closing Date and before the expiration of the applicable statute of limitations. In any event, even if written notice of section 10.2(c) indemnity claims had to be provided within eighteen months of the Closing Date, that requirement would not make the scope of the indemnity under section 10.2(c) unambiguous.

sion that the relevant language is unambiguous. The parties have not cited and research has not revealed any cases in which a court construes the same or similar contract language. Nor has the majority cited any such cases.

The meaning of the Agreement as to the scope of the indemnity obligation under section 10.2(c) is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *See Lenape Resources Corp.*, 925 S.W.2d at 574 (holding contract provision to be ambiguous); *Coker*, 650 S.W.2d at 393–94 (holding that contract language was unclear and ambiguous); *Watkins*, 2003 WL 21786173, at *3 (holding that contract language was uncertain, doubtful, and ambiguous); *A.W. Wright & Associates, P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466, 470 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (holding that language in contracts was uncertain and doubtful and therefore ambiguous); *Gibson v. Bentley*, 605 S.W.2d 337, 338–39 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (holding that condition triggering provision was susceptible of two irreconcilable interpretations and was ambiguous). Therefore, the trial court erred in granting in part the Empeiria Parties' summary-judgment motion, but the trial court did not err in denying the Grant Prideco Parties' summary-judgment motion regarding indemnity liability under section 10.2(c) of the Agreement. *See Coker*, 650 S.W.2d at 394–95.

### *Because the contractual language is unclear, the fact finder should determine what it means.*

The scope of the indemnity obligation under section 10.2(c) is ambiguous. Because the meaning of the provision is unclear, this court should affirm the portion of the trial court's judgment denying the

Grant Prideco Parties' motion for partial summary judgment, reverse all parts of the trial court's judgment in which the trial court granted the Empeiria Parties' summary-judgment motion, and remand the case to the trial court so that the trier of fact may determine the true intent of the parties as to the scope of the indemnity obligation under section 10.2(c) of the Agreement. Because the majority concludes that section 10.2(c) is unambiguous and that the meaning of the provision may be determined as a matter of law, I respectfully dissent.