**Reversed and Remanded and Opinion filed October 25, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00708-CV

---

**CITY OF GALENA PARK; DANNY P. SIMMS, CRUZ R. HINOJOSA, JR., MARICELA SERNA, AND JUAN FLORES, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE GALENA PARK CITY COMMISSION; ROBERT PRUETT, IN HIS OFFICIAL CAPACITY AS CITY ADMINISTRATOR OF THE CITY OF GALENA PARK; MAYRA GONZALES, IN HER OFFICIAL CAPACITY AS CITY SECRETARY OF THE CITY OF GALENA PARK; JIM DEFOYD, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF THE CITY OF GALENA PARK; AND ESMERALDA MOYA, IN HER OFFICIAL CAPACITY AS MAYOR OF THE CITY OF GALENA PARK, Appellants**

**V.**

**BARRY PONDER, Appellee**

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2015-00781**

---

## O P I N I O N

This appeal concerns the validity of a petition seeking an election to amend

the charter of the City of Galena Park, Texas. Appellants, the City of Galena Park and several city officials in their official capacities (collectively, at times, "Galena Park"),[1] challenge the trial court's grant of summary judgment favoring appellee Barry Ponder and denial of summary judgment favoring Galena Park. In its judgment, the trial court ordered Galena Park to hold an election on the proposed amendments. We reverse and remand for further proceedings.

## I. Background

On September 15, 2014, Ponder delivered a set of papers to Galena Park City Secretary Mayra Gonzales that purported to be a petition in support of city charter amendments proposed by a group called Citizens for a Better Galena Park. The top page of the papers was an unsigned cover sheet, the body of which read as follows:

> **To the City Commission of Galena Park:**
>
> We, the undersigned, registered and qualified voters of the State of Texas, residents of Galena Park, . . . present to the city Commission this petition and request that the following proposed amendments to the charter of the city of Galena Park be submitted to the registered and qualified voters of the city of Galena Park for the adoption or rejection at the next special election . . . .

The next ten pages contained four proposed charter amendments. The amendments concerned, respectively, (1) the creation of four new commissioner positions to act as liaisons from the city commission to certain departments of the city government; (2) appointment and duties of fire chief, fire marshal, and police chief; (3) a detailed procedural system for voter initiative, referendum, and recall petitions; and (4) changes to the general powers of the mayor and the commission.

---

[1] These officials are Mayor Esmeralda Moya, City Administrator Robert Pruett, City Secretary Mayra Gonzales, City Attorney Jim DeFoyd, and City Commissioners Danny Simms, Cruz Hinojosa, Maricela Serna, and Juan Flores.

None of these pages were signed or dated. The next page in the set also appears to be an unsigned cover sheet, the body of which read:

> Attached is a petition bearing <u>614</u> signatures of registered and qualified voters of the State of Texas and City of Galena Park. Additional are the affidavit of those volunteer petitioners. [sic] Present[ed] to the City Secretary of Galena Park on this date September 15, 2014.[2]

After the second cover letter came several sets of signature pages. Each individual signature page is labeled "Charter Amendment Petition" and includes the following language above the signatures:

> **<u>To the Galena Park City [Commission]:</u>**
>
> We, the undersigned duly qualified electors of the City of Galena Park, by affixing our signatures hereon, demand the attached Charter Amendments to be placed before the citizens of Galena Park for their approval.

Each of the signature pages contains multiple columns listing information for each signatory, including date of signature, address, and date of birth or voter registration number. At the end of each set of signature pages is a signed and notarized "Circulator's Statement," each of which reads: "I, the petition circulator, swear or affirm that I personally circulated the petition papers; it bears ___ signatures: all signatures thereto were made in my presence; and I believe them to be the genuine signatures of the persons whose name they purport to be." In each statement, the blank space is filled in by hand with the number of signatures in the particular set.[3]

---

[2] While most of the cover letter was typed, the number "614" was handwritten into a blank.

[3] Although the pages containing the circulator's statements also have rows for voter signatures, no signatures appear on them other than those of the circulators themselves. The circulator's statement pages also do not include the language that appears at the top of each of

3

According to Gonzales's uncontroverted affidavit, there were no proposed charter amendments attached to the signature pages delivered to her. Gonzales reviewed the signature pages to determine the validity of the signatures. She then sent a letter to Citizens for a Better Galena Park in which she stated

> I . . . have reviewed the election petition and other documents submitted on September 15, 2014, in connection with a proposed charter amendment.
>
> I have determined that 492 of the signatures that were contained in the documents meet the requirements for signatures on election petitions . . . . I have also determined, based on the voter registration records maintained by Harris County, that there are between 3,677 and 4,025 qualified voters in the City of Galena Park and that the number of valid signatures is in excess of 5% of the number of qualified voters in the City of Galena Park.
>
> I have made no investigation into any issues concerning the manner in which the petition and related documents were circulated or how the signatures were obtained and I make no determination concerning those matters.

According to City Attorney Jim DeFoyd's affidavit, he also reviewed the submitted papers and concluded that they did not constitute a proper petition primarily because (1) the signature pages did not include the text or a description of any proposed amendment to the charter, (2) there were no amendments attached to the signature pages as referenced, and (3) the proposed amendments covered multiple subjects, which he asserts is not permitted under the law. DeFoyd further stated in his affidavit that neither he nor Gonzales certified that the papers constituted a proper petition. Attached to DeFoyd's affidavit were five additional affidavits, which DeFoyd stated are from signatories. Several of the affiants stated that they were told the amendments were aimed at lowering Galena Park water

---

the other signature pages addressed to the "City of Galena Park City [Commission]" and referencing attached amendments.

4

bills, but some also acknowledged not reading the materials for themselves. DeFoyd further stated that he reported this information to the city commission.

After the commission refused to call an election on the proposed amendments, Ponder filed the present lawsuit. Both sides filed motions for summary judgment. In his motion, Ponder contended that because the petition met the legal requirements for a valid petition and City Secretary Gonzales certified the validity of a sufficient number of signatures, the commission had a ministerial duty to submit the proposed charter amendments to voters. As evidence in support, Ponder attached the papers that he had presented to Gonzales, the letter sent by Gonzales regarding the number of valid signatures, and a copy of the city charter.

In its motion, Galena Park asserted that the papers did not constitute a proper petition because it was impossible to discern exactly what amendments were being supported by the signatories, the proposed amendments improperly covered multiple subjects, and the submission lacked a Spanish translation. Galena Park also denied in its motion that Gonzales had certified the petition. Galena Park attached as evidence the affidavits of Gonzales, DeFoyd, and the five signatories; the papers presented to Gonzales; and Gonzales's letter regarding the validity of the signatures. In a reply, Ponder additionally argued that Gonzales's letter constituted a certification of the election petition. The trial court granted Ponder's motion for summary judgment, denied Galena Park's motion, and ordered that the "City Defendants shall place the proposed amendments on the ballot for the next available election date." In its appeal, Galena Park contends the trial court erred in granting summary judgment for Ponder and, instead, should have granted summary judgment favoring Galena Park.

## II. Legal Foundations

### A. Summary Judgment Standards

We review a trial court's summary judgment rulings under an abuse of discretion standard. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In respect to traditional motions for summary judgment, such as those filed by both sides in this case, the movant has the burden of establishing that there is no genuine issue as to any material fact and that the movant is therefore entitled to judgment as a matter of law. *Id*. (citing Tex. R. Civ. P. 166a(c)). The nonmovant has no burden to respond to or present evidence regarding the motion until the movant has carried its burden to conclusively establish the cause of action or defense on which its motion is based. *State v. $90,235*, 390 S.W.3d 289, 292 (Tex. 2013). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if any of the independent summary judgment grounds is meritorious. *$90,235*, 390 S.W.3d at 292.

When parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, we may consider the propriety of the denial as well as the grant. *See Grant Prideco, Inc. v. Empeiria Conner L.L.C.*, 463 S.W.3d 157, 160 (Tex. App.—Houston [14th Dist.] 2015, no pet.). If the issue

raised is based on undisputed and unambiguous facts, we may determine the question presented as a matter of law. *Id.* We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered. *Id.*

## B. Election Petitions

Galena Park's city charter has little to say regarding procedures to amend its charter, merely referencing section 9.004 of the Texas Local Government Code. Galena Park, Tex., City Charter art. VIII, § 19 (1946).[4] Section 9.004 reads in relevant part:

### § 9.004. Charter Amendments

(a) The governing body of a municipality . . . shall submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000, whichever number is the smaller.

. . . .

(d) An amendment may not contain more than one subject.

(e) The ballot shall be prepared so that a voter may approve or disapprove any one or more amendments without having to approve or disapprove all of the amendments.

Tex. Loc. Gov't Code § 9.004.

Section 9.004(a) outlines the right of the qualified voters of a municipality to petition their governing body to amend its charter, a power sometimes referred to

---

[4] "SECTION 19: AMENDMENTS. This Charter after its adoption by the qualified voters of the City may be amended in accordance with Article 1170 of the Revised Civil Statutes of Texas of 1925, and any amendments thereto." The current version of Article 1170 is section 9.004 of the Local Government Code. *See* Act of June 17, 1961, 57th Leg., R.S., ch. 500, 1961 Tex. Gen. Laws 1108–09, repealed by Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 1306.

as "initiative and referendum." *See In re Roof*, 130 S.W.3d 414, 417 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding); *see also Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980); *Taxpayer's Ass'n of Harris Cty. v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655, 657 (1937) ("[T]he power of initiative and referendum . . . is the exercise by the people of a power reserved to them, and not the exercise of a right granted. It follows that, in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved."); *accord In re Woodfill*, 470 S.W.3d 473, 480 (Tex. 2015) (quoting *Taxpayer Ass'n*). When the requirements of section 9.004 are met, the proposed amendments must be put to a vote, and the duty of the municipal officials to do so is a ministerial one. *See Coalson*, 610 S.W.2d at 747 (addressing predecessor statute); *In re Roof*, 130 S.W.3d at 417-18.

### III. Analysis

### A. Ponder's Motion

We begin our analysis by addressing whether the trial court properly granted Ponder's motion for summary judgment. As discussed above, Ponder raised essentially two grounds, contending that the commission had a ministerial duty to submit the proposed charter amendments to voters because the papers submitted met all of the legal requirements for a valid petition, or, alternatively, Gonzales's letter regarding the validity of the signatures constituted a certification of the petition. Neither the papers themselves nor Gonzales's letter, however, demonstrate Ponder's entitlement to summary judgment as a matter of law.

### 1. Validity of Petition

Although section 9.004 of the Local Government Code does not dictate a

precise form for election petitions, it clearly requires the submission to be supported by a petition signed by a certain number of qualified voters in order to mandate an election. It states: "The governing body of a municipality . . . shall submit a proposed charter amendment to the voters . . . if the submission is supported by a petition signed by a [sufficient] number of qualified voters." Tex. Loc. Gov't Code § 9.004(a).

We know that a sufficient number of qualified voters signed the petition. But, has Ponder conclusively shown that the petition supported the submission? As citizens may support the right of initiative and referendum irrespective of the proposition submitted to the voters, we do not construe the plain language of section 9.004 as requiring all petition signatories as being "FOR" voters. But, Ponder must establish that the petition supported the submission of the proposed charter amendments.

The cover letter in the papers Ponder presented to Gonzales represents that the collected signatures were in support of the submission of proposed amendments. Additionally, the signature pages themselves reference "Charter Amendments" with a demand that they be placed before the citizens for their approval. The circulator's statements aver that the circulator's circulated a "petition paper." The gap in Ponder's motion for summary judgment, however, is that the evidence he attached—the papers submitted, Gonzales's letter, and the city charter—do not conclusively establish that the four amendments presented are the actual amendments that the signatories were demanding be placed on the ballot. The signature pages note that amendments were attached, but when Ponder submitted the papers, nothing was attached to the signature pages.[5]    Neither the

---

[5] Ponder does not contest Gonzales's statement that no amendments were attached to the signature pages when filed. Moreover, there were multiple sets of signature pages submitted and only one set of amendments, so the amendments could not have been attached to each different

9

signature pages, the circulator's statements, nor the cover letters describe the amendments.

In his motion, Ponder failed to conclusively establish that the signatories on the provided signature pages supported the petition that was submitted. *See Mann Frankfort*, 289 S.W.3d at 848.[6] The papers he submitted to Gonzales did not do so, and he offered no other evidence to demonstrate that this elemental requirement was met.

## 2. Scope of Letter

Although Ponder contends that the letter from Gonzales constituted a certification of the election petition, it is clear from the face of the letter itself that this is not so. In the letter, Gonzales stated that she determined only that the signatures were valid and numbered in excess of 5% of qualified voters in the city. However, she further explicitly stated that she "made no investigation into any issues concerning the manner in which the petition and related documents were circulated or how the signatures were obtained and [makes] no determination concerning those matters."[7] Although Ponder emphasizes Gonzales's use of the

set of signature pages.

[6] Some city charters contain provisions specifying how petition signature pages must indicate the substance of the amendment or other issue of governance on which supporting signatures are being sought. *See, e.g., City of Sherman v. Hudman*, 996 S.W.3d 904, 916-17 (Tex. App.—Dallas 1999, pet. granted, judgm't vacated w.r.m.) (noting Sherman charter required full text of ordinance in petition forms). Although the Galena Park charter does not contain such specification, this fact does not mean that the substance of the supported amendments does not need to be established in some manner. To hold otherwise would be to sanction bait-and-switch tactics that could undermine the integrity of the initiative process.

Here, there is at least some indication in the record that the amendments Ponder submitted to Gonzales were not the same amendments presented to at least some of the signatories. As discussed above, a few of the signatories provided affidavits to Galena Park in which they stated they were told by circulator's that the proposed amendments concerned an issue not addressed in the amendments Ponder submitted: lowering water bills.

[7] In his reply to Galena Park's response and cross-motion, Ponder states that in her letter,

term "election petition," there is no indication in the context of the letter that she intended this term to indicate that the submitted papers were a valid and proper election petition; indeed, she explicitly indicates that she did not make such a determination.[8]  Accordingly, Gonzales's letter does not support the trial court's grant of summary judgment.  Because Ponder failed to prove conclusively either of his grounds for summary judgment, the trial court erred in granting summary judgment favoring Ponder and ordering an election be held.

## B.  Galena Park's Motion

Next, we must consider whether the trial court erred in denying Galena Park's motion for summary judgment.  We begin here by noting that the grounds Galena Park urges on appeal are not in complete sync with the grounds it raised in the trial court.  In its motion, Galena Park asserted that as a matter of law, the papers Ponder submitted did not constitute a valid election petition because (1) it

---

Gonzales "certif[ied] that the Election Petition contained no deficiencies."  The letter itself refutes this contention.  It is clear from the letter that Gonzales's review was limited to the validity of the signatures and did not extend to the validity of the petition as a whole.  Ponder further does not cite any authority supporting his position that Gonzales's letter was sufficient to certify the petition and thus mandate an election.

[8] Moreover, Ponder does not cite any authority supporting the proposition that even if the city secretary had certified the petition as valid that this would have resolved the issue as a matter of law.  *See Sherman*, 996 S.W.3d at 916-17 (holding city official was without authority to certify petition where petition was not in compliance with applicable law).  We further note that, although not cited by Ponder, the recent Texas Supreme Court opinion *In re Woodfill*, 470 S.W.3d 473, is distinguishable for several reasons.  First, the city charter at issue in *Woodfill* specifically assigned the duty to certify referendum petitions to the city secretary, whereas, the Galena Park charter contains no such assignment.  *Id*. at 475-76.  Second, the secretary in *Woodfill* in fact certified the petition and did not adopt the city attorney's contrary findings, whereas, Gonzales here did not certify the petition and expressly deferred to the city attorney's opinion regarding the sufficiency of the petition papers.  *Id*. at 478-79.  Third, *Woodfill* was a mandamus action in which the city council did not request any relief on the merits, and a direct appeal concerning the sufficiency of the petition was then pending in the court of appeals, whereas, the present case is a direct appeal concerning the validity of the petition.  *Id*. at 480 & n.10.  And fourth, *Woodfill* did not involve the fundamental question posed in the present case concerning whether the signatories actually supported the submitted petition.

11

was impossible to tell what amendments had been supported by the signatories, (2) the proposed amendments improperly covered multiple subjects, and (3) no Spanish-language translation was provided. On appeal, Galena Park raises the first two grounds, but instead of arguing that a Spanish translation was required, it asserts that the proposed amendments were not in proper form and "would leave a voter guessing as to the chief features and the character and purpose of the proposed amendments." Because Galena Park has abandoned its Spanish-translation argument on appeal, we will not address the merits of that contention. *See Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991). And because Galena Park did not preserve its objection to the form of the proposed amendments, we likewise will not address the merits of that assertion.[9] *See Stiles v. Resolution Trust Corp.*, 857 S.W.2d 24, 26 (Tex. 1993); *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 621 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

### 1. Sufficiency of Petition

Turning to the first ground, concerning whether Galena Park demonstrated as a matter of law that the papers Ponder submitted did not constitute a valid election petition, the evidence clearly shows that voter signatures were collected in support of proposed charter amendments. The signature pages indicate that the signatures were in support of submitting proposed charter amendments to the voters and, that at the time the signatures were obtained, the proposed amendments were attached to the signature pages. Additionally, as discussed above, Gonzales determined that the number of valid signatures on the signature pages was in excess of the number required by section 9.004. It is also important to note that

---

[9] In its motion, Galena Park actually described the proposed amendment pages as "contain[ing] an adequate description of a request."

Ponder provided an unsigned cover letter to Gonzales indicating that the submitted amendments were the ones the signatories requested be submitted to voters. Although, as discussed above, the papers Ponder submitted do not conclusively establish that the petition was the one the signatories supported, the papers do contain enough information to raise a fact question as to whether the requirements of section 9.004 were met. *See Mann Frankfort*, 289 S.W.3d at 848; *see also Coalson*, 610 S.W.2d at 747; *In re Roof*, 130 S.W.3d at 417-18.

As mentioned, Galena Park additionally attached several affidavits allegedly from signatories who stated that they were told the petition they were signing was aimed at reducing water bills.[10] None of the affiants, however, made any claims regarding the written text of the amendments. In fact, it is clear from several of the affidavits that the affiants did not read the proposed amendments but at best depended on statements by the circulators. Galena Park complains of alleged improprieties in how the signatures were gathered but not of any violation of 9.004 requirements. Galena Park did not establish its entitlement to summary judgment based on its first ground.

## 2. Scope of Amendments

Galena Park's second ground for summary judgment is premised on section 9.004(d) of the Local Government Code, which states in full: "An amendment may not contain more than one subject." Tex. Loc. Gov't Code § 9.004(d). Although Galena Park does not offer much detail regarding its second ground, it suggests that the papers Ponder submitted could not have constituted a valid election petition because they included four separate amendments on different

---

[10] We note that, although Galena Park describes the affiants as signatories, it does not reference where their signatures appear, and it provides no evidence whether these signatories were among the 492 determined by Gonzales to be qualified voters.

subjects and at least one of the amendments (number two) contained provisions dealing with two separate subjects: the appointment and qualifications of the fire chief and the appointment and qualifications of the police chief. Nothing in the text of section 9.004, however, expressly prohibits an election petition from proposing more than one amendment. Section 9.004(e) requires that an election ballot must be "prepared so that a voter may approve or disapprove any one or more amendments without having to approve or disapprove all of the amendments," but there is no such requirement in section 9.004 for petitions used to garner supporting signatures. The language of a ballot proposition is the responsibility of the authority ordering the election, not the responsibility of the party petitioning for an election to be called. *See* Tex. Elec. Code § 52.072.

Concerning the fire chief and police chief changes sought in amendment two, what constitutes the same subject matter for section 9.004(d) purposes is generally construed broadly. *See Gibson v. City of Orange*, 272 S.W.2d 789, 790 (Tex. App.—Beaumont 1954, writ ref'd) (construing predecessor statute broadly and approving ballot proposition that proposed numerous interconnected changes to city charter); *Edwards v. Murphy*, 256 S.W.2d 470, (Tex. App.—Fort Worth 1953, writ dism'd) (holding proposed charter amendment concerned only one subject where all suggested changes were already contained within single state statute); *Garitty v. Halbert*, 235 S.W. 231, 236 (Tex. Civ. App.—Dallas 1921, writ dism'd w.o.j.) (concluding proposed amendment of two sections of city charter dealt with the single subject of taxation, even though the funds were to be spent on both schools and libraries); *see also Dacus v. Parker*, 383 S.W.3d 557, 568-69 (Tex. App.—Houston [14th Dist.] 2012) (citing *Gibson* and *Garrity* and holding proposition involved only one subject—creation of a municipal fund—even though fund was to be used to support improvements to both streets and drainage), *rev'd*

14

*on other grounds*, 466 S.W.3d 820 (Tex. 2015). This reading acknowledges that proposed changes to a city charter may seek broader schematic changes to city government that may make sense only as an all-or-nothing proposition. *See Gibson*, 272 S.W.2d at 790. In the present context, new rules governing the appointment and qualifications for police chief and fire chief are part of the subject of how the city's emergency services departments are to be organized. Consequently, amendment two did not impermissibly address more than one subject and the trial court did not err in refusing to grant summary judgment favoring Galena Park on this ground.

## IV. Conclusion

The record demonstrates that a sufficient number of qualified voter signatures were obtained in support of putting proposed charter amendments up for election. However, the manner of submission of the election petition materials left it unclear whether the petition submitted was the one supported by the signatories. Because the evidence does not demonstrate conclusively that the petition was the one the signatories supported, summary judgment is not supportable on this record.

Accordingly, we sustain Galena Park's issues to the extent they challenge the trial court's grant of summary judgment favoring Ponder and deny the issues to the extent they urge judgment favoring Galena Park. We further reverse the trial court's judgment and remand for further proceedings consistent with this opinion.


/s/      Martha Hill Jamison
         Justice


Panel consists of Justices Jamison, Donovan, and Brown.

15