# IN THE SUPREME COURT OF TEXAS

════════════
No. 14-0667
════════════

IN RE JARED WOODFILL ET AL., RELATORS

══════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
══════════════════════════════════════════════════

## PER CURIAM

Residents of the City of Houston filed a referendum petition requesting the City Council to reconsider and repeal its equal rights ordinance and, if it did not repeal the ordinance, to put it to popular vote. The City Council refused, claiming the petition was invalid. Though the ordinance is steeped in controversy, the legal principles at play are relatively simple. First, "the power of . . . referendum . . . is the exercise by the people of a power reserved to them," and this power should be protected. *Taxpayers' Ass'n of Harris Cnty. v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937). Second, city officials must perform their ministerial duties. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). Finally, when officials refuse to do so, and when there is no adequate remedy by appeal, mandamus may issue. *See In re Union Carbide Corp.*, 273 S.W.3d 152, 156 (Tex. 2008) (orig. proceeding) (per curiam) ("[A] relator must show that it has no adequate remedy by appeal."). We conclude that the Houston City Council has not performed a ministerial duty and there is no adequate remedy by appeal. Accordingly, we conditionally grant mandamus relief.

This dispute concerns the duties of the City Secretary and the City Council of Houston when a referendum petition is filed. If Houstonians dislike an ordinance passed by the City Council, they may submit a referendum petition:

> If . . . *a petition signed and verified*, as required in section 2(a) hereof, by the qualified voters equal in number to [the required amount] . . . shall be filed with the City Secretary, protesting against the enactment or enforcement of such ordinance or resolution, it shall be suspended from taking effect and no action theretofore taken under such ordinance or resolution shall be legal and valid. Immediately upon the filing of such petition *the City Secretary shall do all things required* by section 2(b) of this Article. Thereupon the *Council shall immediately reconsider* such ordinance or resolution and, if it does not entirely repeal the same, shall submit it to popular vote at the next city general election, or the Council may, in its discretion, call a special election for that purpose; and such ordinance or resolution shall not take effect unless a majority of the qualified voters voting thereon at such election shall vote in favor thereof.

Houston, Tex., Charter, art. VII-b, § 3 (emphasis added).

Thus, there are three general steps. First, the referendum petition must be "signed and verified in the [required] manner and form" by the required number of voters and be timely filed. *Id.* art. VII-b, § 2(a), 3. Second, the City Secretary must review the petition, certify the results of her review, and present such petition and certificate to the City Council. *Id.* art. VII-b, § 2(b). Third, after receiving the petition and City Secretary's certificate, the City Council must either repeal the ordinance or submit it to popular vote. *Id.* art. VII-b, § 3.

The "signed and verified" requirement is two-fold. The required manner and form of the petition encompasses two broad aspects. The petition must be "signed by qualified voters of the City of Houston." *Id.* art. VII-a, § 2. Each signature must be accompanied by the signatory's printed

2

name, address, date of signing, and birth date or voter registration number. *Id.*; *see* TEX. ELEC. CODE § 277.002(a)(1) (imposing additional requirements for election petitions).

Those circulating the petition and gathering signatures must also swear that they themselves signed the petition and that the signatures they gathered are genuine.[1] The mandamus record indicates that the Charter prescribes the following form of verification:

> I, _____, being first duly sworn on oath depose and say: that I am one of the signers of the above petition, that the statements made therein are true, and that each signature appearing thereto was made in my presence on the day and date it purports to have been made, and I solemnly swear that the same is a genuine signature of the person whose name it purports to be.
>
> _____
> Sworn to and subscribed before me this _____ day of _____, 2_____.
> *Notary Public, State of Texas*

Houston, Tex., Charter, art. VII-a, § 3.

The filing of a "signed and verified" petition in the prescribed form and manner triggers the City Secretary's duties. The Charter commits the following responsibilities to the City Secretary:

> On or before the thirtieth day after the date of filing of the petition the City Secretary shall certify to the City Council (a) the greatest total vote cast for Mayor at any city general election held within three years next preceding the date of the filing of such petition, and (b) the number of valid signatures on said petition, and shall present such petition and certificate to the Council.

*Id.* art. VII-b, § 2(b).

---

[1] Alternatively, each signature may be individually acknowledged. *See* Houston, Tex., Charter, art. IX, § 3. This alternative means of verification is not at issue here.

In this case, after the City Council adopted the equal rights ordinance, a coalition of citizens (some of whom are the Relators in this proceeding)[2] organized a petition drive calling for the City Council to repeal the ordinance or put it to popular vote. They gained around 55,000 signatures, but before submitting the petition, they crossed through as many as 24,000 signatures.[3] Only 17,269 signatures were required for the petition to be valid.[4] The coalition delivered the petition to the City Secretary on July 3, 2014.

The City Secretary reviewed a portion of the petition filing but stopped after determining there were enough valid signatures. Though she stopped her review by Friday, August 1, she waited until Monday, August 4 to report to the City Council.[5] In the interim, the City Attorney finished his own review, and he asked the City Secretary to include his findings in her report. As a result, the City Secretary's report contained two seemingly conflicted parts: her own analysis of the signatures (which indicated that the petition was sufficient), and the City Attorney's review (which indicated it was not). With regard to her own findings, the City Secretary reported that:

> As provided by Article VIIb, Section 2(b), as amended by Article V, Section 10, I am able to certify that [the required number of signatures is 17,269]; and . . . [t]he number of signatures verified on the petition submitted on July 3, 2014 is 17,846.

---

[2] The Relators are Jared Woodfill; Steven Hotze, M.D.; F.N. Williams, Sr.; and Max Miller. Although the parties dispute whether Hotze has standing to pursue mandamus, the other parties' standing is not disputed. Accordingly, we need not address the issue of Hotze's standing.

[3] The City's briefing puts the number of crossed-out signatures at either 18,798 or around 24,000. The Relators do not contest these numbers in their briefing.

[4] The City Secretary put the number of required signatures at 17,269. In trial court proceedings regarding this same dispute, the court determined that 17,249 signatures were needed.

[5] Her report was dated August 1, but she later admitted this was a typographical error carried over from an initial draft of the certification report.

4

. . . .
17,846 signatures appearing on the petition contained correct information as required
being (1) signature, (2) printed name, (3) voter registration number/residence address;
and (4) date of signing.

In other words, even without having reviewed the entire petition, there were more than enough valid signatures.

Her report concluded, however, with a paragraph noting the City Attorney's findings. This paragraph indicated that many of the signatures (even ones that the City Secretary said were valid) were on pages of the petition that were invalid. In other words, according to the City Attorney, entire pages of the petition could not be counted, disqualifying all of the individual signatures that were on them:

According to the City Attorney's Office and reviewed by the City Secretary the analysis of the City Attorney's Office, 2,750 pages containing 16,010 signatures do not contain sufficient acknowledgment as required by the Charter. Therefore, according to the City Attorney's Office only 2,449 pages containing 15,249 signatures can lawfully be considered toward the signatures required.

The City Secretary later clarified in a deposition that her "review" of the City Attorney's work merely constituted confirming his math—were there the number of signatures on the pages that he said there were? She did not double-check his reasons for concluding that many pages of signatures were invalid.

On August 4, 2014, the City announced it would not reconsider the ordinance. In response, the petition organizers immediately sued the Mayor, City Secretary, and City in district court, seeking declaratory and injunctive relief. On August 11, they filed an original mandamus proceeding in the Fourteenth Court of Appeals. The court of appeals denied the petition on August 15, holding

5

the Relators had an adequate remedy by appeal. *In re Woodfill*, No. 14-14-00648-CV, 2014 WL 4088704, at *1 (Tex. App.—Houston [14th Dist.] Aug. 15, 2014, orig. proceeding). That same day, the petition organizers filed a supplemental petition in the district court, requesting a writ of mandamus. The mandamus record does not indicate the City asserted any counterclaims for affirmative relief. On August 26, the Relators sought mandamus relief from this Court. While the proceedings in this Court were pending, the district court conducted a jury trial. According to the City, the jury's verdict left just over 2,000 valid signatures. The trial court, however, disregarded some of the jury findings and, in a final judgment dated April 17, 2015, determined that the total number of valid signatures was 16,684—still less than the required amount. Accordingly, it denied all relief requested by the petition organizers. An appeal is now pending in the Fourteenth Court of Appeals.

Mandamus may issue to compel public officials to perform ministerial acts. *Anderson*, 806 S.W.2d at 793. "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Id.* Disputed facts, however, prevent the Court from resolving issues in a mandamus proceeding. *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding).

The Relators assert that under the Houston Charter, after the City Secretary certifies the petition's sufficiency, the City Council has a ministerial duty to immediately reconsider the ordinance and, if it does not repeal it, put it on the November 2015 ballot.[6] The City responds that

---

[6] In the alternative, the Relators argue the City Secretary should be compelled to finish reviewing all signatures on the petition. Because under the posture of the case as it now stands we conclude the City Council has a ministerial duty to reconsider the ordinance and, if it does not repeal it, submit it to popular vote, we do not reach this issue.

6

the City Council has no duty to act because the City Secretary did not certify a sufficient number of signatures. Moreover, according to the City, disputed fact issues, such as whether signatures were forged or affidavits were defective, preclude mandamus.

We agree with the Relators that the City Secretary certified their petition and thereby invoked the City Council's ministerial duty to reconsider and repeal the ordinance or submit it to popular vote. The City Secretary unequivocally stated that "I am able to certify that . . . [t]he number of signatures verified on the petition submitted on July 3, 2014 is 17,846," and that only 17,269 were required. As for the City Attorney's findings, the City Secretary merely stated that "[a]ccording to the City Attorney's Office and reviewed by the City Secretary," there were not enough valid pages. The City Secretary did not expressly adopt the City Attorney's findings, and she never reviewed his reasons—she merely reviewed his math. The Charter requires the City Secretary to "certify" her findings, and the only findings she expressly certified were her own.[7] The City Attorney may, no doubt, give legal advice to the City Secretary, but he cannot assume her duties. Though the City Secretary's report mentions the City Attorney's findings, the City Secretary did not adopt the City Attorney's findings as her own, review the substance of his findings herself, or certify the inadequacies to the City Council.

Once the City Council received the City Secretary's certification, it had a ministerial duty to act. According to the Charter, following the City Secretary's certification, "the Council shall immediately reconsider such ordinance or resolution and, if it does not entirely repeal the same, shall

---

[7] In an affidavit, the City Secretary averred that the "contention that my staff or I 'validated' the July 3 Petition is not correct." Nonetheless, it remains true that she "certif[ied]" that she verified 17,846 signatures, but she did not say she was certifying the City Attorney's work.

submit it to popular vote at the next city general election." Houston, Tex., Charter, art. VII-b, § 3. The Charter gives the City Secretary, *not* the City Council, the discretion to evaluate the petition. Simply put, the City Secretary's certification started the process outlined in the Charter for reconsidering ordinances following a referendum petition, invoking the Council's ministerial duty to carry out its obligations.[8]

But what of the City Council's complaints of forgery, false oaths, and the like? Although these issues were addressed at trial and are now pending before the court of appeals, we note that the City Secretary never claimed the referendum petition was plagued by forgery or perjury. Yet the City Council decided, of its own accord, not to act, disregarding the City Secretary's certification that the petition had enough signatures. The Charter, however, gives the City Council no discretion to re-evaluate the petition; instead, it requires "immediate[]" action by the City Council following the City Secretary's certification. To give authority to the "council to make the ultimate determination of

_____

[8] *See In re Jones*, 335 S.W.3d 772, 776 (Tex. App.—Beaumont 2011, orig. proceeding) (per curiam) ("When the petition is properly certified, as provided by the Charter, the Charter permits only one action by the City Council: it must [] order and hold an election . . . ."); *In re Porter*, 126 S.W.3d 708, 711 (Tex. App.—Dallas 2004, orig. proceeding [mand. denied]) ("We conclude the charter creates a ministerial duty for the city council to proceed with the steps to calling a recall election once the city secretary presents it with a certificate of sufficiency of a petition."); *Duffy v. Branch*, 828 S.W.2d 211, 214 (Tex. App.—Dallas 1992, orig. proceeding) ("[T]he city council has the ministerial duty to call the recall election."); *Howard v. Clack*, 589 S.W.2d 748, 752 (Tex. Civ. App.—Dallas 1979, orig. proceeding) ("We find that section 93 imposes on the Garland City Council a mandatory, ministerial duty to order a recall election on presentation of a petition accompanied by a certificate of the city secretary that the petition is sufficient."); *Holt v. Trantham*, 575 S.W.2d 83, 86 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.) ("Upon the presentation of a proper petition made a condition precedent, the authorities appointed to call an election on a particular measure or proposition have no discretion to refuse to call it."); *Young v. State ex rel. Hughes*, 87 S.W.2d 520, 521 (Tex. Civ. App.—Fort Worth 1935, writ ref'd) ("[T]he calling of the election by the board of aldermen is not a discretionary matter, but a ministerial duty whenever the clerk certifies to the board of aldermen that the recall petitions are sufficient.").

sufficiency of the petition would commit the decision to a body that could not be considered impartial." *Howard*, 589 S.W.2d at 750.[9]

If the City Council cannot independently evaluate the petition as a predicate to its ministerial duty to act, then it may not decide for itself that the petition is invalid and force the petition organizers to sue. Faced with the City Secretary's certification, the City Council had no discretion but to repeal the ordinance or proceed with the election process. If the City Council believed the City Secretary abused her discretion in certifying the petition or otherwise erred in her duties, it was nevertheless obligated to fulfill its duties under the Charter and thereafter seek any affirmative relief to which it might be entitled. But the City Council did not do so. Instead, it refused to fulfill its ministerial duty, forcing the petition organizers to file suit. The mere existence of the City's challenge to the petition does not negate the City Council's duty to proceed with the political process unless that obligation is stayed by a court of competent jurisdiction.[10] To hold otherwise would be

---

[9] *See also In re Suson*, 120 S.W.3d 477, 480 (Tex. App.—Corpus Christi 2003, orig. proceeding) ("We cannot infer from [the city charter] that the city secretary or the city commissioners have a right or duty to examine the sufficiency of the petitions."); *Burns v. Kelly*, 658 S.W.2d 731, 734 (Tex. App.—Fort Worth 1983, orig. proceeding) ("[W]e found that the city charter contains no provision authorizing the city council (or the city secretary or anyone else) to examine the signatures, etc., for authenticity . . . ."); *Blanchard v. Fulbright*, 633 S.W.2d 617, 621 (Tex. App.—Houston [14th Dist.] 1982, orig. proceeding) (per curiam) ("[W]e do not find any provision in the Angleton City Charter giving any of the city officials a discretionary right of review.").

[10] We do not decide whether an injunction staying the election would be available. *Compare Blum v. Lanier*, 997 S.W.2d 259, 263 (Tex. 1999) ("It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process."), *with In re Lee*, 412 S.W.3d 23, 27 (Tex. App.—Austin 2013, orig. proceeding) (requiring city council to order recall election, "subject to stay by a court of competent jurisdiction"), *and Duffy*, 828 S.W.2d at 214 (requiring city council to order recall election but allowing the district court to enjoin it if it "determines that the recall petition is insufficient"). Nor do we decide whether the City is entitled to any affirmative relief because the City has not sought it, the district court judgment remains pending on appeal, and, on the record before this Court, the City Council has not been relieved of its ministerial duty to either repeal the ordinance or institute the election process.

9

to allow cities to freely shirk their obligation to follow through on properly certified petitions. Indeed, it would mean their obligation is not ministerial at all.

> This accords with our past holdings that
>
> the power of initiative and referendum, as provided for in the city's charter, is the exercise by the people of a power reserved to them, and not the exercise of a right granted. It follows that, in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved.

*Taxpayers' Ass'n of Harris Cnty.*, 105 S.W.2d at 657; *see also Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980) (orig. proceeding); *Glass v. Smith*, 244 S.W.2d 645, 648–49 (Tex. 1951).

Under the circumstances here, the Relators do not have an adequate remedy by appeal because the appellate process will not resolve the case in time for the referendum to be placed on the November 2015 ballot. If Houston voters are to consider the ordinance at the City's general election this year, then no later than August 24, 2015, the City Council should order that it be put up for election.[11] This leaves insufficient time for the appeal to be finally resolved. Under such circumstances, mandamus has long been recognized as an appropriate remedy when city officials improperly refuse to act on a citizen-initiated petition. For example, in *Coalson v. City Council of Victoria*, we granted mandamus and ordered a city to submit a proposed charter amendment to the public for a vote. 610 S.W.2d at 747. Any delay would have prevented the amendment from being

_____

[11] For elections—such as this one—falling on "a uniform election date other than the date of the general election for state and county officers," the Election Code currently requires that the election be ordered "not later than the 71st day before election day." TEX. ELEC. CODE § 3.005(c)(2). Election day this year is November 3, 2015. The 71st day before then is August 24, 2015. We note that the Election Code has been amended, and effective September 1, 2015, the deadline is the 78th day before election day. Act of May 5, 2015, 84th Leg., R.S., ch. 84, § 3.

voted on for another two years. *Id.* at 746. The courts of appeals have granted mandamus relief under similar circumstances,[12] and this case is no different.

The City argues that when a writ of mandamus is sought to compel a public official to act on a referendum petition, it should be filed in the district court, not an appellate court. It is true that a mandamus proceeding to compel public officials to put something on the ballot may start in district court. *Anderson*, 806 S.W.2d at 792 n.1. However, mandamus proceedings may also originate in the appellate courts. *See Coalson*, 610 S.W.2d at 745–46 (granting mandamus in original proceeding before this Court regarding whether a charter amendment should be on the ballot). Indeed, the Election Code expressly authorizes the "supreme court or a court of appeals [to] issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election." TEX. ELEC. CODE § 273.061. The Relators may seek relief in an original proceeding in this Court.

* * *

The legislative power reserved to the people of Houston is not being honored. Accordingly, without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant the writ of mandamus lest the actions of city officials "thwart[] . . . the will of the public." *See Coalson*, 610 S.W.2d at 747. The City Council is directed to comply with its duties, as specified in the City Charter, that arise when the City Secretary certifies that a referendum petition has a sufficient number of valid

---

[12] *See, e.g.*, *Lee*, 412 S.W.3d at 27 & n.1 (conditionally granting mandamus relief and ordering election when the deadline was days away); *In re Roof*, 130 S.W.3d 414, 419 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding) (conditionally granting mandamus relief and ordering city secretary to present petition to city council); *Duffy*, 828 S.W.2d at 214 (conditionally granting mandamus relief and ordering recall election).

11

signatures. Any enforcement of the ordinance shall be suspended, and the City Council shall reconsider the ordinance. If the City Council does not repeal the ordinance by August 24, 2015, then by that date the City Council must order that the ordinance be put to popular vote during the November 2015 election. The writ will issue only if the City Council does not comply.

Opinion Delivered: July 24, 2015