IN RE Shannon DORN et al., Relators

NO. 15–0632

Supreme Court of Texas.

OPINION DELIVERED:
September 4, 2015

Brad Rockwell, Lowerre Frederick Perales Allmon & Rockwell, Austin, TX, Craig F. Young, The Young Law Firm, San Marcos, TX, for Shannon Dorn, Relators.

William M. (Mick) McKamie, McKamie Krueger LLP, San Antonio,TX, Michael John Cosentino, City of San Marcos, San Marcos, TX, for Respondents.

JUSTICE BROWN, joined by JUSTICE GREEN, concurring in the denial of the petition for writ of mandamus.

On August 28, 2015, the Court issued an order denying the relators' petition for writ of mandamus in this case. I write to provide some explanation for that denial and to distinguish this case from a seemingly similar matter on which we recently ruled.

This case concerns the relators' effort to amend the city charter of San Marcos to prohibit the city from using fluoridated water. On April 2, 2015, the relators submitted a petition seeking that the proposed amendment be included on the city's general-election ballot for November 3, 2015. Under section 3.005(c)(2) of the Election Code, the latest date any proposed city charter amendments could be added to the November ballot was August 24, 2015.

On May 5, 2015, the city clerk informed the relators that the petition was invalid because it did not include an oath or affirmation that "the statements were true, that each signature ... is the genuine signature of the person whose name purports to be signed thereto, and that such signatures were placed thereon in the person's presence." The parties dispute whether the city charter requires such an oath or affirmation in this instance.

The relators sent letters to the city on May 18 and June 16 insisting that city officials had improperly refused to perform ministerial duties regarding the petition and demanding that they do so immediately. But the relators took no legal action to force the city's hand. Instead, on June 18 the city filed a declaratory-judgment action in district court in Hays County. Despite the looming deadline, the relators waited until July 17 to answer the city's lawsuit and counterclaim for declaratory, injunctive, and mandamus relief—more than ten weeks after the city had refused the petition.

On August 14, the trial court ruled for the relators and ordered the city to review their petition without requiring any affirmation or verification of the signatures. The city filed a notice of appeal the next day, staying any further action by the trial court. On August 21, six days after the city filed its notice of appeal, the relators sought mandamus relief in this Court.

We deploy mandamus as an extraordinary and discretionary remedy, not as a matter of right. *Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993) (citing *Callahan v. Giles,* 137 Tex. 571, 575, 155 S.W.2d 793, 795 (1941)). And though mandamus is not an equitable remedy, equitable principles govern its issuance. *Id.* (citations omitted). "One such principle is that '[e]quity aids the diligent and not those who slumber on their rights.'" *Id.*

(quoting *Callahan*, 137 Tex. at 576, 155 S.W.2d at 795).

The relators knew on May 5 that the city had refused to consider their petition. Yet with the August 24 statutory deadline less than 16 weeks away, the relators waited more than ten weeks before seeking mandamus relief from the district court. Even then, the relators sought mandamus only in response to the city's request for declaratory relief, and only after the city's lawsuit had been on file for nearly a month. To top it off, it took the relators almost a week to ask for a mandamus from this Court once the city had appealed the trial court's ruling. By then the statutory deadline was just three days away.

The relators have offered no explanation for their failure to diligently pursue the remedies available to them. Instead, they blame the city for employing "procedural maneuvers" and "doing nothing to resolve its claims in a timely manner" once it had filed its lawsuit. But nothing the city did or did not do absolves the relators from their duty to diligently pursue their rights. We will not grant extraordinary remedies to litigants who "slumber on their rights" and then demand expedited relief. *Callahan*, 137 Tex. at 576, 155 S.W.2d at 795; *see also In re Int'l Profit Assocs.*, 274 S.W.3d 672, 676 (Tex.2009) (per curiam) ("delaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay").

The relators' failure to diligently pursue relief likewise belies their justification for not first seeking mandamus in the court of appeals. The rules provide that "[i]f [a] petition is filed in the Supreme Court without first being presented to the court of appeals, the petition must state the compelling reason why the petition was not first presented to the court of appeals." Tex. R. App. P. 52.3(e). In this case, the relators assert that because of the impending statutory deadline, they "have a compelling reason to submit this petition to the Supreme Court to secure finality now rather than first going to the Austin Court of Appeals." Yet as the urgency the relators face is of their own making, it is no excuse for skipping past the court of appeals. Moreover, the fourteen courts of appeals have mandamus jurisdiction for a reason. This Court cannot be the sole arbiter of expedited extraordinary relief in a state of nearly 30 million people spread out across 254 counties.

The dissent draws some comparisons between this case and *In re Woodfill*, 470 S.W.3d 473 (Tex.2015) (per curiam). In *Woodfill*, we granted mandamus relief to order the City of Houston to either repeal an ordinance or submit it to the voters for approval in the next general election. *Id.* at 481. But *Woodfill* is easily distinguished from this case. For instance, the petition organizers in *Woodfill* gathered their signatures and submitted their petition over a year before the statutory deadline—not less than six months before as the relators in this case. *Id.* at 476. The *Woodfill* petition organizers also sued the city in district court for declaratory and injunctive relief immediately upon its rejection of their petition. *Id.* at 478. In addition, within a week of the city rejecting the petition, the petition organizers filed an original mandamus proceeding in the court of appeals. *Id.* The same day the court of appeals denied that mandamus, the petition organizers filed a supplemental petition in district court, requesting a writ of mandamus from that court. *Id.* These early attempts at extraordinary relief were denied in light of the appellate remedy the petition organizers could pursue once they had obtained a final judgment in their action for declaratory and injunctive relief. *See id.* It was only after

that appellate remedy later proved inadequate, and—unlike this case—after we had received full briefing from the petition organizers and the city, that this Court granted mandamus on July 24, 2015. *Id.* at 480–81. The relatively short-lived and sporadic activity in the case at bar bears little resemblance to the protracted and relentless litigation that finally resulted in a mandamus in *Woodfill*.

Process matters. Regardless of the merits of their claims, the relators in this case have failed to show, under this Court's well-established rules, principles, and expectations, that they are entitled to the extraordinary relief they seek.

JUSTICE DEVINE, joined by JUSTICE LEHRMANN, dissenting from the denial of the petition for writ of mandamus.

I would have granted the writ of mandamus. The City of San Marcos disregarded its own laws regarding charter amendments, ignoring the legislative prerogative of the people through citizen-initiated petitions. This is a power protected by our laws,[1] our precedent,[2] and the City's own Charter.[3] Here, the City Clerk of San Marcos refused to review the signatures on a petition calling for a charter amendment. The Clerk reasoned that the petition was invalid because the signatures were not accompanied by any oath or affirmation confirming their authenticity. Because neither the City Charter nor Texas law imposes this requirement, I believe the City Clerk should have been directed to review the signatures on the petition.

The City claims the petition does not satisfy section 6.03 of the City's Charter.

This section, however, pertains exclusively to petitions regarding *ordinances*:

> Initiative petition papers shall contain the full text of the proposed legislation in the form of an *ordinance,* including a descriptive caption. Referendum petition papers shall contain a sufficient description of the *ordinance* sought to be referred to identify it, or if the *ordinance* has been passed by the council, the full text of the *ordinance* sought to be referred shall be included in such papers. Before signatures on any petition paper may be counted, one of the signers of such petition paper, a qualified voter, shall make oath or affirmation before the city clerk or any other officer competent to administer oaths or affirmations, that the statements made therein are true, that each signature to the paper appended is the genuine signature of the person whose name purports to be signed thereto, and that such signatures were placed thereon in that person's presence.

San Marcos, Charter, art. VI, § 3 (emphasis added). Any requirement that signatures on petitions be verified applies only to citizen-initiated legislation on ordinances. Indeed, the Charter does not contemplate these provisions applying to anything else. Just one example: under the Charter, if an initiative petition calls for the adoption of the ordinance, the City may choose between passing the ordinance itself or submitting it to a vote. *Id.* art. VI, § 4(a). If a referendum petition calls for the repeal of an ordinance, the City may either repeal the ordinance itself, or call an election. *Id.* art. VI, § 4(b). But because charter amendments *always* re-

---

1. *See* TEX. ELEC. CODE § 277.001–.004.

2. *See, e.g., In re Woodfill,* 470 S.W.3d 473, 475 (Tex.2015) (per curiam).

3. *See* San Marcos, Charter, art. XII, § 11 ("Amendments to this Charter may be framed and submitted to the voters of the city in the manner provided by state law.").

quire an election—the City cannot amend the charter on its own—this section obviously does not apply to charter amendments. TEX. ELEC. CODE § 9.004; San Marcos, Charter, art. XII, § 11.

When it comes to Charter amendments, the Charter relies solely on state law to define the proper procedure: "Amendments to this Charter may be framed and submitted to the voters of the city in the manner provided by state law." San Marcos, Charter, art. XII, § 11. State law, however, does not require the verification the City Clerk demands. "The governing body shall submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality. . . ." TEX. LOC. GOV'T CODE § 9.004(a). The Election Code, in turn, specifies the requirements "[f]or a petition signature to be valid." TEX. ELEC. CODE § 277.002. The verification requirement the City argues for is not one of the statutorily-imposed requirements.

In other words, state law does not impose these verification requirements, and the City Charter relies solely on state law for the charter-amendment process. No literal reading of the Charter allows the criteria of section 6.03 to be applied to charter amendments. Indeed, mere months ago, the Court recognized a distinction exists between city charter requirements for citizen-initiated charter amendments as opposed to ordinances. *See Dacus v. Parker*, 466 S.W.3d 820, 829 (Tex.2015) ("[A]lthough the Houston charter provides no means for amending the charter, the Texas Local Government Code does.").

The Court has long held that laws regarding citizen-initiated legislation "should be liberally construed in favor of the power reserved" to the people. *In re Woodfill*, 470 S.W.3d at 480 (quoting *Taxpayers' Ass'n of Harris Cnty. v. City of Houston*, 105 S.W.2d 655, 657 (Tex.1937)). This case is no different. Moreover, the Election Code disfavors local technicalities that hamper the people's right to amend their charter: "Any requirements for the validity or verification of petition signatures in addition to those prescribed by this chapter that are prescribed by a home-rule city charter provision or a city ordinance are effective only if the charter provision or ordinance was in effect September 1, 1985." TEX. ELEC. CODE § 277.004. Simply put, the City cannot amend its charter to impose the requirements the City Clerk demands, let alone impose them here.

Though the deadline for ordering elections passed, *see* TEX. ELEC. CODE § 3.005(c); *In re Woodfill*, 470 S.W.3d at 480 n. 11, the people of San Marcos were not without a remedy. The City should not be able to avoid its duty under the Charter—indeed, under Texas law—merely because it failed to timely order the election. If, as the Election Code states, "[f]ailure to order a general election does not affect the validity of the election," TEX. ELEC. CODE § 3.007, then neither should a late order in this case.

Here, a district court determined the City Clerk must review the petition signatures and perform her ministerial duty. Rather than comply, the City initiated an interlocutory appeal, assuring that the deadline would pass before relief could be obtained. I would not permit a city to use a directory deadline in the Election Code in this manner to either avoid a ministerial duty or thwart the will of the people. When the Texas Election Code and Local Government Code, as well as the City's own Charter, require the City to act, the City may not hide behind the statutory

deadline. Indeed, "[t]he right to vote is so fundamental in our form of government that it should be as zealously safeguarded as are our natural rights," and election statutes must be interpreted "in favor of that right." *Thomas v. Groebl*, 212 S.W.2d 625, 630 (Tex.1948). In *Woodfill*, we required a city to comply with its duties before the deadline, *see In re Woodfill*, 470 S.W.3d at 475, and I would have required compliance here as well.

Though the deadline does not remove a remedy, it does foreclose any adequate remedy by appeal. *See In re Williams*, 470 S.W.3d 819, 823 (Tex.2015) (per curiam); *In re Woodfill*, 470 S.W.3d at 480. Because we did not act, the voters were denied any timely relief.

As we have held before, a City's "refusal to submit the proposed amendment[ ] to the vote of the people thwarts not only the legislative mandate" of the Local Government Code, but also "the will of the public." *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex.1980). This case is no different. I would have granted the petition for mandamus relief and directed the City Clerk to count the signatures. Accordingly, I respectfully dissent from the denial of the petition for writ of mandamus.