# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20756

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2016

Lyle W. Cayce
Clerk

F.N. WILLIAMS, SR.; HOUSTON AREA PASTORS COUNCIL; HERNAN CASTANO; MAGDA HERMIDA; KHANH HUYNH,

Plaintiffs–Appellants,

versus

ANNISE D. PARKER,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

A group of Houston-area pastors and a council representing the interests of Houston-area pastors challenge the dismissal of their claims against Annise Parker, the former mayor of Houston. The district court found, variously, that plaintiffs lacked standing, that they failed to state a claim under Federal Rule of Civil Procedure 12(b)(6), that they failed to show Parker was not immune

No. 15-20756

from suit, and that res judicata barred their claims. Because the claims are non-justiciable, we affirm the dismissal.

I.

This case stems from a heated dispute surrounding the Houston Equal Rights Ordinance ("HERO"), enacted by the city council in 2014.[1] HERO was controversial; its supporters claimed it was a garden-variety non-discrimination ordinance mainly designed to prohibit discrimination against lesbian, gay, bisexual, and transgendered ("LGBT") persons,[2] while its opponents maintained that it granted LGBT individuals special privileges[3] and that, to avoid rejection, it was rammed through the council instead of being put to referendum.[4]

Plaintiffs opposed the passage of HERO and sought to have it repealed. They attempted to gather petition signatures in sufficient number that the city council would be forced either to repeal HERO or to place it on the ballot as a referendum. The Houston Area Pastors Council ("HAPC"), one of the plaintiffs, funded the signature drive. Plaintiff F.N. Williams, Sr., a Houston resident,

---

[1] Ordinance No. 2014-530 banned discrimination on the bases of "Protected Characteristics" defined as "sex, race, color, ethnicity, national origin, age, familial status, marital status, military status, religion, disability, sexual orientation, genetic information, gender identity, or pregnancy."

[2] *See, e.g.*, Manny Fernandez & Mitch Smith, *Houston Voters Reject Broad Anti-Discrimination Ordinance*, N.Y. TIMES (Nov. 3, 2015), http://www.nytimes.com/2015/11/04/us/houston-voters-repeal-anti-bias-measure.html?_r=0.

[3] The plaintiffs' brief claims that "[f]ar from creating equality, 'HERO' created special rights, not equal rights, for biological males to enter the public restrooms reserved for adult women, adolescent girls, and infants. On November 3, 2015, Houston voters resoundingly defeated passage of HERO by a margin of 69% against and 31% in favor." We set forth the contentions of the two sides not for their accuracy *vel non* but to describe the intensity of the controversy.

[4] *See, e.g.*, Leslie Loftus, *Houston Rejects Special LGBT Privileges by Huge Margin*, THE FEDERALIST (Nov. 4, 2015), http://thefederalist.com/2015/11/04/houston-rejects-special-lgbt-privileges-by-huge-margin/.

2

signed the petition. Along with plaintiffs Hernan Castano, Magda Hermida, and Khanh Huynh, Williams helped to circulate the petition and gathered signatures. The petitions were then turned in to the City Secretary, Anna Russell, whose ministerial duty was to make sure the signatures were valid and, if so, to certify the results. Russell adjudged the petition to have 17,846 signatures, more than the minimum required number of 17,269.[5]

Nevertheless, Parker and the then-City Attorney, David Feldman, held a press conference a few days later, stating that the petitions had been rejected for fraudulent signatures. In response, Williams and other plaintiffs filed a variety of actions in state court asking that Parker be forced to act in accordance with the city charter and either repeal HERO or put it to referendum. HAPC funded that litigation. The Texas Supreme Court issued a writ of mandamus requiring Parker to obey the city charter by either repealing the ordinance or scheduling the referendum. *In re Woodfill*, 470 S.W.3d 473 (Tex. 2015) (per curiam).

During that process, Parker, through attorney Feldman, issued subpoenas to five Houston-area pastors (including plaintiffs Castano, Hermida, and Huynh), requiring production of speeches and sermons related to HERO and communications with their congregations concerning HERO. Parker defended the subpoenas on Twitter and also in state court, where they had been challenged as unlawful.[6] In the resulting referendum in November 2015, the

---

[5] Russell did not count every signature but only enough—roughly a third of the total—to be certain that the petitions had enough signatures to succeed; she then ceased tallying.

[6] The subpoenas were highly controversial and made national news. *See, e.g.*, Sarah Bailey, *Houston Subpoenas Pastors' Sermons in Gay Rights Ordinance Case*, WASH. POST (Oct. 15, 2014), https://www.washingtonpost.com/national/religion/houston-subpoenas-pastors-sermons-in-gay-rights-ordinance-case/2014/10/15/9b848ff0-549d-11e4-b86d-184ac281388d_story.html.

voters ordered HERO's repeal.[7]

Shortly after the conclusion of *Woodfill,* plaintiffs sued in state court under 42 U.S.C. § 1983, alleging that Parker had deprived them of their First Amendment rights to freedom of speech, religion, and association, as well as their right to vote. Parker removed to federal court. After briefing, the district court entered a judgment of dismissal "for Lack of Standing and Failure to State a Claim."

Plaintiffs claim injury from three distinct actions they attribute to Parker: first, that HAPC "had to" pay attorney's fees in the *Woodfill* litigation and other state-court litigation to remedy Parker's unlawful conduct; second, that the issuance of subpoenas for sermons violated their First Amendment Rights; and third, that Parker's actions in contesting the propriety of the signatures violated their First Amendment rights. Because none of these claims suffices to establish standing, the district court correctly dismissed the action.

## II.

Federal courts have jurisdiction only over "cases" or "controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting U.S. CONST. art. III, § 2, cl. 1). There is no case or controversy without standing to sue. *Id.* Standing is a threshold issue that we consider before examining the merits. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). We review dismissals for lack of standing *de novo. Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

To demonstrate standing, these plaintiffs must show "(1) that they suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest; (2) that the injury is traceable to the challenged

---

[7] *See* Fernandez & Smith, *supra* note 2.

No. 15-20756

action of the [defendant]; and (3) it is likely, rather than merely speculative, the injury will be redressed by a particular decision."[8]  Claimed injuries in fact must be "fairly traceable to the actions of the defendant."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  "The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."[9]  If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit.  *Rivera*, 283 F.3d at 319.

## A.

Per the plaintiffs, HAPC has standing to seek reimbursement of all of its fees, expenses, and costs in funding the various state-court suits.  HAPC had to spend the money to finance that litigation, so the reasoning goes, to force Parker to obey the city charter, and therefore HAPC is entitled to recover that money in a separate suit.  This circuit has repeatedly rejected that precise argument.  *See, e.g., Ass'n of Cmty. Orgs. for Reform Now ["ACORN"] v. Fowler*, 178 F.3d 350 (5th Cir. 1999).  In *ACORN,* we held, with no room for distinction, that the payment of attorney's fees in previous cases—even where the litigation was to enforce federal rights—is not an injury in fact for subsequent litigation.[10]  That was because the injury to ACORN was fundamentally self-inflicted—no one forced it to sue, just as no one forced HAPC to finance the

---

[8] *Hollis v. Lynch*, 827 F.3d 436, 441 (5th Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[9] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (footnote omitted); *accord, e.g.*, *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 318–19 (5th Cir. 2002).

[10] *ACORN*, 178 F.3d at 358 ("An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries.").

*Woodfill* lawsuit. The injury there, similar to the damage here, was not "fairly traceable to the actions of the defendant," so ACORN's claimed infirmities were insufficient to satisfy the injury-in-fact requirement.[11] We and other circuits have held similarly in other cases.[12]

Additionally, permitting HAPC to recover would eviscerate the "American Rule" that, absent a superseding statute or ruling, each party is responsible for its own attorney's fees, regardless of result. *See, e.g.*, *Alyeksa Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257 (1975). HAPC seeks to evade that requirement by filing a separate suit to recoup fees it previously expended. That rationale has no support in the law of federal justiciability; as one example, the Supreme Court has rejected an analysis that would "authorize the recovery of attorney's fees in every case where the plaintiff has prevailed against the defendant in prior litigation involving the same issues."[13] Recognizing standing for HAPC would do just that.[14]

---

[11] *Id.* (quoting *Bennett*, 520 U.S. at 162).

[12] *See, e.g.*, *Ass'n for Retarded Citizens of Dall. v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization."); *accord, e.g.*, *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 80 (3d Cir. 1998) ("We hold . . . that the pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III.").

[13] *Summit Vally Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 725 (1982). *Cf. Steel Co.*, 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.").

[14] At oral argument, HAPC's counsel suggested that HAPC can recover fees based on 42 U.S.C. § 1988. But the plain text of Section 1988 says that it applies only to fees from the case at bar—there is nothing to suggest that it permits recovery of fees from previously litigated cases. *See* 42 U.S.C. § 1988(b) ("In any action to enforce a provision of [various federal laws], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."). So this court would be authorized to award HAPC its fees only for this litigation, not previous state-court proceedings, if it were to prevail.

Even that is somewhat irrelevant, however, because HAPC never mentions Sec-

No. 15-20756

HAPC claims, additionally, that the money it "had to" spend in organizing the signature drive also is injury in fact. But that contention suffers from the same flaw as does the argument over attorney's fees: The injury is not fairly traceable to the defendant. HAPC made the decision, on its own, to pursue a repeal of HERO; no action of Parker's forced it to spend that money. Given that HAPC's only theory of standing is based on expenditures to litigate *Woodfill* and other state court cases and to organize the signature drive, the district court properly dismissed as to HAPC.[15]

### B.

Next, the remaining plaintiffs assert that they have standing based on Parker's failure to certify the petition. They state that each of them helped to organize the petition drive, that Williams signed the petition both as a voter and as a circulator,[16] and that Parker's actions violated their right to vote, as well as their freedoms of speech, association, and petition.

Plaintiffs filed this action on August 3, 2015. The opinion in *Woodfill*, in which the Texas Supreme Court had granted a writ of mandamus compelling Parker to suspend enforcement of HERO and either repeal the ordinance or put it to a vote, was issued on July 24, 2015. So, by the time plaintiffs filed this complaint, they were not suffering from any injury—it was already certain that either the ordinance would be repealed or the referendum would take place on time and without further issue. The only possible claim for standing,

---

tion 1988 in its brief. Failure to raise an issue on appeal is waiver. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

[15] HAPC makes no claim of associational standing on behalf of its members. Its only theory of standing is the standing-based-on-attorney's-fees-or-petition-expenditures notion that we reject.

[16] Castano, Hermida, and Huynh are not residents of the city and did not sign the petition.

given that *Woodfill* had already been decided, was that plaintiffs were somehow injured by the delay between their submission of the petition and *Woodfill*'s belated order to Parker to repeal HERO or schedule the referendum. But no such claim is made with any specificity here; instead, there is only the unadorned contention that Parker's failure immediately to certify the referendum violated various First Amendment rights. That contention, without more, does not meet that burden, given that "[t]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 523 U.S. at 103.

## C.

Castano, Hermida, and Huynh also claim standing based on subpoenas requiring them to produce sermons and communications with members of their congregations related to HERO. The plaintiffs suggest, without elaboration beyond a bare assertion, that the subpoenas violated their freedoms of speech, religion, association, and petition. As we have said, plaintiffs have the burden of establishing standing. *Id.* But they cite no authority—from this circuit or any other—for the proposition that the issuance of a subpoena violates any constitutional right. Nor do they explain how, precisely, their rights were curtailed—there is no assertion, for example, that their speech or their practice of religion was chilled by the receipt of the subpoenas, no assertion that they felt compelled to alter their interactions with their congregations because of Parker's actions. Under this record, the plaintiffs have not adequately established an explanation of that alleged harm—it is not sufficient for Article III purposes to state that the issuance of a subpoena in and of itself violates a constitutional right. That procedural insufficiency alone requires dismissal for want of standing.

The judgment of dismissal is AFFIRMED.