# Supreme Court of Texas

No. 23-0595

In re David Rogers, Jennifer Pakenham, and Kristi Powell,
*Relators*

On Petition for Writ of Mandamus

**PER CURIAM**

Qualified voters petitioned the local Board of an emergency services district for a ballot proposition at the next available election to alter the sales tax rates within the district. The Board, believing the petition to be legally deficient, refused to place it on the ballot. Relators, three signatories of the petition, seek a writ of mandamus compelling the Board to determine whether the petition contains the statutorily required number of signatures or, alternatively, ordering the Board to call an election on the petition. Because we conclude that the Board has a ministerial duty to determine whether the petition contains the required number of signatures for placement on the ballot, we conditionally grant the writ.

## I

Emergency services districts are political subdivisions that provide emergency services to residents within the district's boundaries.

*See* TEX. HEALTH & SAFETY CODE § 775.031.  They are created when requested and approved by the voters of a county (or counties) in which the district is to be located.  *See id.* §§ 775.011-.026.  Each such district is overseen by a five-member board of emergency services commissioners.  *See id.* §§ 775.034-.036.

An emergency services district may impose a sales and use tax to raise revenue.  *Id.* § 775.0751(a).  Once a tax rate is established, an election is required to change or abolish it.  *Id.*  The board may call for such an election by adopting a resolution.  *Id.* § 775.0752(b).  Alternatively, the district's voters can petition for an election.  Section 775.0752 states that "[t]he board *shall* call an election if a number of qualified voters of the district equal to at least five percent of the number of registered voters in the district petitions the board to call the election."  *Id.* (emphasis added).

Once an election is called, it is generally governed by the same provisions that govern elections to adopt or abolish county sales taxes.  *Id.* § 775.0752(a) (citing TEX. TAX CODE §§ 323.401-.408).  In addition, Section 775.0752 specifies the required ballot language, depending on the type of action sought.  Those provisions state:

> (c) At an election to adopt the tax, the ballot shall be prepared to permit voting for or against the proposition: "The adoption of a local sales and use tax in (name of district) at the rate of (proposed tax rate) percent."

> (d) At an election to abolish the tax, the ballot shall be prepared to permit voting for or against the proposition: "The abolition of the local sales and use tax in (name of district)."

> (e) At an election to change the rate of the tax, the ballot shall be prepared to permit voting for or against the

2

proposition: "The (increase or decrease, as applicable) in the rate of the local sales and use tax imposed by (name of district) from (tax rate on election date) percent to (proposed tax rate) percent."

*Id.* § 775.0752(c)-(e).

In the fall of 2022, voters in Travis County Emergency Services District No. 2 began circulating a petition to change the sales and use tax rates in their District. The District includes the City of Pflugerville and some surrounding areas. The District currently imposes a 1.0 percent sales tax rate in some parts of the District but a 0.5 percent sales tax rate in other parts. The petition called for an election to change the tax rates as follows:

This is a petition for "The decrease in the rate of the local sales and use tax imposed by Travis County Emergency Services District #2 from 0.5 percent to 0 percent in the City of Pflugerville, and 1.0 percent to 0.5 percent in those areas of the District subject to 1.0 percent taxation."

The petition includes 5,752 signatures, or around 6.5 percent of the registered voters in the District, which is greater than the 5 percent threshold the statute requires. *Id.* § 775.0752(b). Yet the District's Board rejected the petition during a public meeting, claiming it was "legally insufficient." Though it gave no explanation at the time, the Board now claims the petition is deficient in at least two ways: (1) it combines two separate propositions into one, which would contradict the mandatory ballot language set forth in Section 775.0752, and (2) it misleads voters by calling for a "decrease" to a zero percent tax rate

3

instead of an "abolishment" of the tax.[1] The Board has never contended any of the petition signatures is invalid for any reason.

Relators here are three of the petition signatories: David Rogers, Jennifer Pakenham, and Kristi Powell. They originally sued in February 2023 in district court, seeking a writ of mandamus directing the Board to hold an election no later than November 2023. During discovery, relators filed a petition for writ of mandamus in May 2023 in the court of appeals. The court of appeals denied relief without substantive opinion. ___ S.W.3d ___, 2023 WL 4748846 (Tex. App.—Austin July 25, 2023). Thereafter, relators filed their mandamus petition in this Court and then nonsuited their claims in the district court.

## II

Before examining the merits, we address the Board's argument that the Court lacks jurisdiction to grant mandamus relief against the Board, which is the only named respondent. As a political subdivision of the State, *see* TEX. HEALTH & SAFETY CODE § 775.031(a), an emergency services district is entitled to governmental immunity, which operates like sovereign immunity. *See generally Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (discussing this concept); *see also Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts."); *El Paso County v. El Paso Cnty. Emergency*

---

[1] We express no opinion on the merits or validity of these claims.

*Servs. Dist. No. 1*, 622 S.W.3d 25, 38 (Tex. App.—El Paso 2020, no pet.) ("A county's immunity is derived from the state's sovereign immunity because it is a unit of state government, but its immunity is referred to as 'governmental immunity.'"). The Board, as the governing entity of the District, also retains immunity. *See Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 749 (Tex. 2019).

But governmental immunity can be waived, of course. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995) ("A city is immune from liability for its governmental actions, unless that immunity is waived."); *Oncor Elec. Delivery Co. v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012) ("[A] waiver of governmental immunity must be clear and unambiguous."). And Section 273.061 of the Election Code waives any claim to immunity from mandamus relief by authorizing this Court or a court of appeals to compel the performance of a duty in connection with an election: "The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election . . . regardless of whether the person responsible for performing the duty is a public officer." TEX. ELEC. CODE § 273.061(a). Here, relators seek to compel performance of a duty that the Health and Safety Code expressly assigns to the "board" of an emergency services district. *See* TEX. HEALTH & SAFETY CODE § 775.0752(b) ("The *board* shall call an election if a number of qualified voters of the district equal to at least five percent of the number of registered voters in the district petitions the board to call the election." (emphasis added)). By authorizing the Court to issue mandamus relief to compel the performance of that duty,

which the Legislature expressly assigned to the Board, the Legislature waived the Board's immunity from relators' claim for relief.

The Board responds that Election Code Section 273.061 authorizes mandamus relief in connection with an election only if the respondent is an individual. First, the Board reads Section 273.061's reference to the "person" responsible for performing a duty as a limiter and, on that basis, argues that the statute authorizes mandamus relief against individuals who comprise the board but not the Board itself. Second, the Board points out that although the Government Code defines "person" to include a "government or governmental subdivision or agency," TEX. GOV'T CODE § 311.005(2), it also states that "the use of 'person,' as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction," *id.* § 311.034.

Given that the Legislature has expressly required identified individuals as well as entities (such as the board of an emergency services district) to carry out certain duties in connection with elections, we conclude that the only reasonable construction of Section 273.061 is that the Legislature intended a "person" against whom mandamus relief is available to include an entity like the Board. The Board's proposed alternate reading would condition availability of mandamus relief on the composition or structure of the governing body that failed to carry out an election-related duty—a clear contravention of the Legislature's stated intent that this Court "issue a writ of mandamus to compel the performance of *any* duty imposed by law in connection with the holding

6

of an election." TEX. ELEC. CODE § 273.061(a) (emphasis added). Consistent with this reasoning, this Court and others have granted conditional mandamus relief under Section 273.061 to compel a body comprised of multiple individuals to perform an election-related duty as required by statute or ordinance. *See, e.g.*, *In re Durnin*, 619 S.W.3d 250, 255 (Tex. 2021) (conditionally granting mandamus relief directing the Austin City Council to delete language from a ballot proposition); *In re Petricek*, 629 S.W.3d 913, 921 (Tex. 2021) (conditionally granting mandamus relief directing "the Austin City Council" to revise ballot language of a citizen-initiated ordinance); *In re Williams*, 470 S.W.3d 819, 823 (Tex. 2015) (conditionally granting mandamus relief directing the Houston City Council to revise ballot language in accordance with the Houston City Charter); *see also In re Reed*, No. 02-22-00113-CV, 2022 WL 1405520, at *9 (Tex. App.—Dallas May 4, 2022, orig. proceeding) (conditionally granting mandamus relief and ordering "the [Burleson Independent School] District to conduct a special election"); *In re Neil*, No. 09-13-00144-CV, 2013 WL 3929230, at *1 (Tex. App.—Beaumont Mar. 28, 2013, orig. proceeding) (granting mandamus relief and ordering the Beaumont Independent School District to accept a candidate's application for election); *In re Link*, 45 S.W.3d 149, 156 (Tex. App.—Tyler 2000, orig. proceeding) (granting mandamus relief and ordering the Anderson County Commissioners Court to hold an election on a citizen-initiated petition). We conclude that we have jurisdiction to do the same here.

## III

Turning to the merits, relators contend that the Board's decision to reject their petition as "legally insufficient" was improper because the Board has a ministerial, nondiscretionary duty to call an election based on a petition with the statutorily required number of signatures. We agree. The Board, once it has determined that a petition has a valid number of signatures, must place the petition on the ballot.

Section 775.0752(b) of the Health and Safety Code states that the board "shall" call an election if an appropriate number of qualified voters petition the board to call the election. The plain meaning of this statutory text—and, in particular, the use of "shall"—reflects that the Board has no discretion to deny a petition calling for an election if it contains the requisite signatures. *See* TEX. GOV'T CODE § 311.016(2) (stating that the statutory language of "'[s]hall' imposes a duty"); *see also In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008) (applying the Government Code's definition of "shall"). But, as the statute makes clear, the duty to call the election arises only if the petition includes the requisite signatures. While there may be some discretion to be exercised in making *that* preliminary determination, once it is determined that the requisite signatures were included, the mandatory duty to call the election arises, leaving no room for the exercise of any discretion.

In this sense, this case resembles *Schroeder v. Escalera Ranch Owners' Ass'n*, in which we concluded a city zoning and planning commission had a nondiscretionary duty to approve a plat *once* it had been established that the plat met the applicable regulations. 646 S.W.3d 329, 332 (Tex. 2022) ("'[P]lat approval is a discretionary function

8

that only a governmental unit can perform.' But once the relevant governmental unit determines that a plat conforms to applicable regulations, it has a ministerial duty to approve that plat." (footnote omitted) (quoting *City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985))). Likewise, here, once the Board determines that the petition has been signed by the requisite number of qualified voters, it has a nondiscretionary duty to call an election and place the petition on the ballot.

The Board raises the specter of being forced to place a legally defective petition on the ballot. It argues that Texas law mandates that any changes in tax rates must be "in increments of one-eighth of one percent," TEX. HEALTH & SAFETY CODE § 775.0751(a), whereas relators' proposal would lower the tax rate by a greater increment. The Board also argues that the wording of relators' petition does not match the mandatory ballot language to be used in an election to "abolish" the tax, which is what the Board contends relators' proposal would do, at least in part.

Neither argument justifies the Board's refusal to perform its ministerial duty. Indeed, consistent with the statutory mandate that an election "shall" be called if sufficient signatures are presented, our precedents reflect a strong preference in favor of holding elections on qualified ballot measures even where there is some question about whether the measure, if passed, would be subject to valid legal challenge. *In re Morris*, for example, notes that the City Council had a "statutory duty to place the proposition on the ballot at the earliest available election . . . even in the face of colorable arguments that the

9

proposition under consideration was constitutionally infirm." 663 S.W.3d 589, 597 (Tex. 2023); *see also Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980) (noting that complaints about whether a proposed charter amendment would be invalid were premature until after the election because the proposed amendment could be rejected).

Beyond that, the Board may have discretion to adjust the details of the proposed ballot-measure language if necessary to produce an accurately worded ballot measure. *See Durnin*, 619 S.W.3d at 253 ("'[M]unicipalities generally have broad discretion in wording propositions.' Ballot language 'must capture the measure's essence,' but 'neither the entire measure nor its every detail need be on the ballot.'" (citation omitted) (quoting *Dacus v. Parker*, 466 S.W.3d 820, 825, 826 (Tex. 2015))). In other words, the Board may choose to place on the ballot language that it determines, in its discretion, hews more closely than relators' proposed measure to the language prescribed by Sections 775.0752(c)-(e).[2] What the Board lacks discretion to do is conduct its own unauthorized legal analysis to keep an otherwise qualified petition off the ballot entirely.

## IV

Finally, we hold that mandamus relief is an appropriate remedy. Mandamus relief is an "extraordinary remedy," *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021), which we issue "only to correct a

---

[2] In this instance, any discretion to change the ballot language arises from Section 775.0752's mandatory requirements. We reiterate that ballot language for an initiative not subject to such a statute and otherwise complying with the law should not materially differ from the language in the petition. *See, e.g.*, *Petricek*, 629 S.W.3d at 916.

clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (quoting *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

The Board protests that mandamus is not appropriate because factual questions remain. *See Brady v. Fourteenth Ct. of Appeals*, 795 S.W.2d 712, 714 (Tex. 1990) ("It is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding."). The only factual question that could possibly be in dispute is the validity of the signatures. But, as noted, the Board has never challenged the qualifications or validity of any of the 5,752 signatures.

The Board also contests the necessity of mandamus because, it contends, the issue is not urgent and relators would therefore have an adequate remedy on appeal had they continued to pursue their claims in district court. The Election Code unquestionably authorizes appellate courts to grant mandamus relief to compel the performance of an election-related duty. TEX. ELEC. CODE § 273.061(a). In the context of election disputes, we have held there is no adequate remedy by appeal if "the appellate process will not resolve the case in time for the referendum to be placed on the [next] ballot." *In re Woodfill*, 470 S.W.3d 473, 480 (Tex. 2015). Relators' urgency to have the measure placed on the ballot is not negated by the fact that they originally pursued their claims in district court or that their original petition requested a November 2023 election. *See In re Khanoyan*, 637 S.W.3d 762, 766 (Tex. 2022) ("[I]f the urgency makes proceeding in a district court

11

impracticable, a litigant with statutory authority to do so may file an original mandamus petition in an appellate court . . . .").

V

For the foregoing reasons, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief. We direct the Board for Travis County Emergency Services District No. 2 to determine and announce whether relators' petition contains the signatures of qualified voters equal to at least five percent of the registered voters in the District and, if so, to call an election in accordance with Health and Safety Code Section 775.0752. We are confident the Board will comply, and our writ will issue only if it does not.

**OPINION DELIVERED:** May 24, 2024