# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 19-0877

═══════════════

═══════════════════════════════════

IN RE ALFRED DEWAYNE BROWN, RELATOR

═══════════════════════════════════

═══════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════════════════════════

**Argued October 29, 2020**

JUSTICE GUZMAN delivered the opinion of the Court.

Alfred Dewayne Brown was wrongfully convicted and sentenced to death because the prosecuting attorney withheld and suppressed exculpatory evidence.[1] After securing release from prison, dismissal of all charges, and a judicial declaration of actual innocence, Brown sought compensation under the Tim Cole Act for the twelve years and sixty-two days he was wrongfully imprisoned.[2] Brown's administrative application for compensation included an amended dismissal order based on actual innocence and all other required documents, but the Comptroller for the State of Texas denied the compensation claim on the basis that the district court no longer had jurisdiction to issue an order declaring Brown actually innocent of the crime.

We conditionally grant Brown's petition for writ of mandamus challenging the Comptroller's eligibility determination. The Tim Cole Act imposes a "purely ministerial" duty on

---

[1] *See Ex parte Brown*, No. WR-68,876-01, 2014 WL 5745499, at *1 (Tex. Crim. App. Nov. 5, 2014) (per curiam) (not designated for publication); *see also Brown v. City of Houston, Tex.*, No. CV-H-17-1749, 2019 WL 7037391, at *1 (S.D. Tex. Dec. 20, 2019); *Brown v. City of Houston*, 297 F. Supp. 3d 748, 755-56 (S.D. Tex. 2017).

[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154.

the Comptroller to determine a claimant's eligibility for wrongful-imprisonment compensation based "only" on the "the[] face" of "verified copies" of the required documents.[3]  The district court's amended dismissal order appears regular on its face and contains all the judicial determinations required for compensation under the Act.  The Comptroller's purely ministerial duty to determine eligibility does not include looking behind the verified documents to review the district court's factual and legal conclusions de novo.

## I. Background

In 2005, Brown was convicted of capital murder.  In a post-conviction habeas petition to set aside his conviction and death sentence, Brown alleged the prosecutor failed to disclose exculpatory evidence as required by *Brady v. Maryland*.[4]  That allegation was substantiated when the investigating police officer fortuitously discovered the prosecutor's suppression of phone records confirming Brown's alibi.  Based on this discovery, the State conceded a new trial was required.  In November 2014, the Texas Court of Criminal Appeals vacated Brown's conviction and ordered a new trial because the "State withheld evidence that was both favorable and material to [Brown]'s case in violation of *Brady*."[5]

The State declined to retry Brown at that time and instead filed a motion to dismiss the capital-murder indictment on the basis that inculpating accomplice testimony could not be corroborated.  After serving more than twelve years behind bars, including nearly ten on death row, Brown became a free man in June 2015 when the district court granted the State's dismissal motion.

---

[3] *Id.* § 103.051(b-1).

[4] 373 U.S. 83 (1963).

[5] *Brown*, 2014 WL 5745499, at *1.

The Comptroller denied Brown's first application for wrongful-incarceration compensation under the Tim Cole Act because habeas relief was not based on his actual innocence of the crime. The Comptroller also denied Brown's application to cure the defect, so Brown filed suit in federal court for civil-rights violations.[6]

In the meantime, the Harris County District Attorney appointed a special prosecutor to "analyze [1] whether Brown should be re-indicted, [2] whether he should be declared actually innocent, or [3] whether the status quo of dismissed charges with no formal declaration of innocence should continue." The special prosecutor's ten-month investigation culminated in a detailed 179-page report in which he concluded Brown "could not physically have been at the crime scene." The report further added that Brown "[met] the legal definition of 'actual innocence,'" because "[b]y clear and convincing evidence, no reasonable juror would fail to have a reasonable doubt about whether Brown is guilty of murder."[7]

Concurring with the special prosecutor's report, the District Attorney filed an amended motion to dismiss in March 2019, stating (1) no credible evidence inculpates Brown in the capital murder crime for which he was convicted and sentenced to death, and (2) he "is actually innocent" of that crime.

---

[6] Brown's first application for compensation and the denial of his request to cure are not at issue in this proceeding.

[7] In the habeas context, "actual innocence" includes substantive claims asserting innocence based on newly discovered evidence (*Herrera* claims) and procedural claims involving constitutional errors that "probably resulted in the conviction of one who was actually innocent" (*Schlup* claims). *See In re Allen*, 366 S.W.3d 696, 700 (Tex. 2012) (orig. proceeding). *Herrera* claims have a higher burden than *Schlup* claims, but both types of actual-innocence claims are compensable under the Tim Cole Act. *Id.* at 704-05, 707. In Brown's case, the special prosecutor found "the evidence fully satisfies the higher burden" for a *Herrera* claim. The Act also provides compensation for terms of incarceration under convictions that were based on conduct that did not violate the law at the time of occurrence, *In re Lester*, 602 S.W.3d 469, 475 (Tex. 2020) (orig. proceeding), but that narrow class of actual-innocence cases is not implicated here.

Brown filed a brief supporting the amended motion, but the Houston Police Officers Union, as amicus curiae, opposed it on the basis that the district court lacked jurisdiction to re-dismiss the criminal case against Brown nearly four years after the original dismissal. After holding two hearings on the matter, the district court granted the amended motion and issued the following order:

> The Court WITHDRAWS its Order of Dismissal signed on June 8, 2015 in Cause No. 1035159, and substitutes the following in its stead:

> For the reasons stated in the State's Amended Motion to Dismiss, filed with this Court on March 1, 2019, the Court ORDERS that the criminal action docketed in this Court as Cause No. 1035159 is DISMISSED due to Alfred Dewayne Brown's actual innocence.

The court's formal declaration of actual innocence became final when no appeal was taken.

With the amended dismissal order in hand, Brown timely filed his second application for compensation under the Tim Cole Act.[8] Although Brown's application checked all the statutory boxes, including the requisite actual-innocence determination, the Comptroller denied the compensation claim with the following explanation:

> It is not clear that the district court had jurisdiction to withdraw and reenter a dismissal, or enter a second dismissal in Mr. Brown's case. Consequently, the amended motion to dismiss and the order of dismissal do not clearly indicate on their face that Mr. Brown is entitled to compensation under [the Act].

When the Comptroller subsequently denied Brown's application to cure,[9] Brown invoked this Court's exclusive, original mandamus jurisdiction, which is the only method for reviewing the

---

[8] *See* TEX. CIV. PRAC. & REM. CODE § 103.003 (requiring application to be filed within three years from a qualifying event).

[9] *See id.* § 103.051(d).

Comptroller's decisions under the Act.[10]  Brown seeks mandamus relief compelling the Comptroller to (1) withdraw his denial of Brown's application for compensation and application to cure and (2) compensate Brown for wrongful imprisonment in accordance with the Act's terms. Several amici have filed briefs supporting Brown.[11]

## II. Tim Cole Act

Under the Tim Cole Act, formerly known as the Texas Wrongful Imprisonment Act, "a wrongfully imprisoned person may seek compensation from the state for the period of wrongful imprisonment."[12]  The Act provides three distinct methods of establishing eligibility for compensation, all of which require a determination of innocence in some form or fashion.[13]  Brown seeks compensation solely under Section 103.001(a)(2)(C), which requires that

(1) he "has served in whole or in part a sentence in prison under the laws of this state";

(2) he "has been granted relief in accordance with a writ of habeas corpus";

(3) "the state district court in which the charge against [him] was pending has entered an order dismissing the charge"; and

---

[10] *Id.* § 103.051(e) (authorizing an applicant to challenge the Comptroller's denial of compensation by bringing an action for mandamus relief); TEX. GOV'T CODE § 22.002(c) (providing that only the Supreme Court has authority to issue writs of mandamus against state executive officers); *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding) ("The Comptroller's decision is not appealable, but a claimant may seek review through an original mandamus proceeding.").

[11] Amicus curiae briefs have been submitted by Former Governor Rick Perry; Professor Ron Beal; The Cato Institute; Harris County Commissioner Rodney Ellis; Tim Cole's brother, Cory Session; The Innocence Project of Texas; Innocence Project, Inc.; The Actual Innocence Clinic of The University Of Texas Law School; Harris County Special Prosecutor John Wesley Raley; Right Reverend C. Andrew Doyle, Bishop of the Episcopal Diocese of Texas; Reverend Erik Gronberg, Bishop of the Northern Texas-Northern Louisiana Mission Area of the Evangelical Lutheran Church in America; Bishop Joel N. Martinez (Retired), former Resident Bishop of the San Antonio Area of the United Methodist Church; Senior Rabbi Brian Strauss, on behalf of Congregation Beth Yeshurun; Texas Impact, an interfaith advocacy network; The Anti-Defamation League, a nationally leading anti-hate organization, represented by former National Board Chair Marvin D. Nathan; Bishop Scott J. Jones, resident Bishop of the Texas Annual Conference of the United Methodist Church; Bishop Ann B. Sherer, Retired Bishop of the United Methodist Church; Cardinal Daniel DiNardo, Archbishop of the Roman Catholic Archdiocese of Galveston-Houston; and Edmund Heimlich.

[12] *Allen*, 366 S.W.3d at 699.

[13] TEX. CIV. PRAC. & REM. CODE § 103.001(a).

(4) "the district court's dismissal order is based on a motion to dismiss in which the state's attorney states that [i] no credible evidence exists that inculpates [Brown] and . . . [ii] the state's attorney believes that [he] is actually innocent of the crime for which [he] was sentenced."[14]

To make a claim for compensation under the Act, Brown had to timely file an application for compensation with the Texas Comptroller of Public Accounts and submit the following:

- "a verified copy of the . . . court order, motion to dismiss, and affidavit, as applicable, justifying the application for compensation"; and

- "a statement provided by the Texas Department of Criminal Justice and any county or municipality that incarcerated the person on whose imprisonment the claim is based in connection with the relevant sentence verifying the length of incarceration."[15]

On receipt of an application for compensation, the statute charges the Comptroller with determining (1) "the eligibility of the claimant" from the face of the verified documents and (2) "the amount of compensation owed to an eligible claimant."[16] The Comptroller must make both determinations within 45 days and, if the claim is denied, state the reason for the denial.[17] This mandamus proceeding concerns the Comptroller's determination that Brown is not eligible for compensation.

As to that matter, the Comptroller does not dispute that Brown timely filed the required documents, including the State attorney's and convicting court's affirmative declarations that Brown is actually innocent of the capital-murder charge for which he was sentenced. Nor is

---

[14] *Id.* § 103.001(a)(1), (2)(C).

[15] *Id.* § 103.051(a)(1)–(3). Other required documents are not applicable to the circumstances of Brown's conviction and incarceration. *See id.* § 103.051(a)(4)–(6).

[16] *Id.* § 103.051(b), (b-1).

[17] *Id.* § 103.051(c), (d).

Brown's satisfaction of the actual-innocence standard at issue. Rather, the focus of dissension is the Comptroller's authority to reject the district court's determination that it had jurisdiction to amend the dismissal order to include a declaration that Brown is actually innocent. Whether or not the Comptroller is empowered to do so turns on the proper construction of the Tim Cole Act and its application to the undisputed facts. These are questions of law we review de novo,[18] starting with Section 103.051(b-1) of the Tim Cole Act, which articulates the Comptroller's authority with respect to eligibility determinations:

> In determining the eligibility of a claimant, the comptroller shall consider **only** the verified copies of documents filed under [Section 103.051(a)(2)]. If the filed documents do not **clearly indicate on their face** that the person is entitled to compensation under Section 103.001(a)(2), the comptroller **shall deny** the claim. The comptroller's duty to determine the eligibility of a claimant under this section is **purely ministerial**.[19]

Given the express statutory constraints on the Comptroller's eligibility determinations, the parties primarily join issue on his authority to look behind the verified documents to revisit the district court's jurisdictional findings. Secondarily, Brown argues that the Comptroller substantively erred in concluding the district court lacked jurisdiction to amend the dismissal order when the actual-innocence determination became legally and factually supportable.

### III. Discussion

### A.

The Comptroller contends that the district court's amended dismissal order is facially void (or at least ambiguous as to the court's jurisdiction) because it indicates the existence of a prior

---

[18] *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019).

[19] TEX. CIV. PRAC. & REM. CODE § 103.051(b-1) (emphases added). This Court has also held that the Comptroller's duty to determine the amount of compensation is ministerial, but that duty is not subject to section 103.051(b-1), which refers only to the eligibility determination. *See In re Phillips*, 496 S.W.3d 769, 774-75 (Tex. 2016) (orig. proceeding).

dismissal order made nearly four years earlier. In the Comptroller's estimation, the verified dismissal order declaring Brown actually innocent was essentially a legal nullity and therefore not a dismissal order at all within the meaning of Section 103.001(a)(2)(C)(i). Accordingly, he asserts that denial of Brown's compensation claim was mandatory because the "filed documents do not clearly indicate on their face that [Brown] is entitled to compensation" under Section 103.001(a)(2)(C).

Based on the dates and sequence of events stated in the amended dismissal order, the Comptroller conducted an independent inquiry into the district court's jurisdiction to issue the actual-innocence dismissal order and concluded, contrary to the district court, that the court's general jurisdiction over the case had terminated by virtue of the prior dismissal order. In the Comptroller's view, *Garcia v. Dial*, in which the Court of Criminal Appeals (CCA) held that trial courts have no jurisdiction to reinstate a criminal case after dismissal,[20] controls the jurisdictional question, and the CCA's opinion in *Curry v. Wilson*, which holds that general jurisdiction may continue as to some matters even after dismissal,[21] does not.

In contrapose, Brown asserts the Act means what it says: (1) the eligibility determination may be based "only" on the verified documents filed with the application and is limited to the "face" of those documents; (2) on the face of the documents Brown "is entitled to compensation under Section 103.001(a)(2)" because those documents show he has satisfied the Tim Cole Act's express requirements; (3) the Comptroller has a purely ministerial duty to confirm Brown's eligibility for compensation based on the verified documents; and (4) going behind the district

---

[20] 596 S.W.2d 524, 528 (Tex. Crim. App. 1980).

[21] 853 S.W.2d 40, 44-45 (Tex. Crim. App. 1993).

8

court's order to make a de novo jurisdictional determination is not a "ministerial act" contemplated by the statute. In the alternative, Brown argues the jurisdictional question is settled by *Curry* rather than *Garcia*.

Because we hold that the Comptroller's purely ministerial duty does not include revisiting the district court's adjudication regarding jurisdiction, we do not reach the alternative issue.

**B.**

Jurisdictional questions run the gamut from the obvious to the abstruse. They may be settled as a matter of law or involve mixed questions of law and fact. But we have said that uncertainty of a legal issue does not preclude a legal determination from being ministerial.[22] To the contrary, it is just that because "[a]n official 'has no discretion or authority to misinterpret the law[.]'"[23] The issue here is who has the power to make the jurisdictional determination, and the statute is clear on that point: when the state's attorney and the convicting court issue documents in the proper form declaring a claimant actually innocent, the Comptroller must take those documents, if verified, at face value.

Whether a dismissal order has been issued by the court in which the criminal charge was pending is a matter that should be fairly ascertainable from the required application documents, individually or collectively, and here, no one disputes that the district court was the proper court to make an actual-innocence determination.[24] The jurisdictional question the Comptroller raises concerns the district court's continuing or incipient general jurisdiction to do so. This type of

---

[22] *Phillips*, 496 S.W.3d at 775.

[23] *Id.* (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding)).

[24] *See* TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(C) (providing entitlement to compensation based on actual-innocence finding by "the state district court in which the [criminal] charge against the person was pending").

question is quintessentially judicial, but most critically, is statutorily committed to the district court that issues the dismissal order and was specifically adjudicated by the district court in this case.[25] To conclude that the Comptroller's ministerial duty includes de novo review of the district court's legal determination runs counter to the statutory language and the division of power the Legislature enacted.

By express language, section 103.001(a)(2)(C) commits to the district attorney and the convicting court the power and privilege to make the innocence determination necessary to issue the documents that made Brown eligible for compensation under the Tim Cole Act.[26] To support a compensation claim, those documents must be verified, meaning substantiated under oath or affidavit and thus subject to a penalty for perjury.[27] And on fulfillment of these requirements, the Comptroller must determine eligibility based "only" on the verified documents. Here, the recitations in the dismissal order do not, on their face, invalidate the district court's order. In deciding that the court lacked jurisdiction, the Comptroller stepped out of his statutorily defined ministerial role.

In arguing otherwise, the Comptroller relies principally on *In re Phillips*[28] and *In re Allen*,[29] but that reliance is misplaced. These cases do not support the proposition that the Comptroller's

---

[25] *See id.*; *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020) ("Whether a court has jurisdiction is a question of law[.]"); *Matlock v. Smith*, 71 S.W. 956, 957 (Tex. 1903) ("It is essentially the function of a judge to determine questions of law, and a decision upon such a question is a judicial act.").

[26] TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(C). The other two eligibility grounds commit the qualifying innocence determinations exclusively to the Governor or the judiciary. *See id.* § 103.001(a)(2)(A)–(B).

[27] *Id.* § 103.051(a)(2); *see In re K.M.L.*, 443 S.W.3d 101, 110-11 (Tex. 2014).

[28] 496 S.W.3d 769 (Tex. 2016) (orig. proceeding).

[29] 366 S.W.3d 696 (Tex. 2012) (orig. proceeding).

10

ministerial duty to determine eligibility includes independently evaluating laws governing the jurisdiction of criminal courts.

*In re Phillips* is a Tim Cole Act case involving the Comptroller's statutory duty to determine the amount of compensation due to an eligible claimant.[30] Subject to certain conditions, an eligible claimant is entitled to compensation equal to: (1) $80,000 per year for time served in prison (pro-rated as appropriate); and (2) compensation for unpaid child support that became due during the period of incarceration plus interest on arrearages that accrued during that time.[31] The claimant in *Phillips* was subject to a default child-support judgment in the amount of $304,861.74, which was obtained without the State's participation.[32] Although the claimant requested compensation based on the adjudicated arrearages, the Comptroller claimed exclusive authority to determine the amount of compensation owed under the Act, which he determined to be $25,125.69.[33]

We described the Comptroller's statutory obligation to determine the amount of wrongful-imprisonment compensation owed under the Act as "exclusive," "ministerial," and not controlled by an arrearages judgment in a child-support enforcement proceeding.[34] Rather, the Comptroller's "ministerial duty under the Act is to conduct an independent and accurate calculation" of the compensation owed to the claimant.[35] That calculation is "dictated by the controlling state law on arrearages and interest" and is "plainly ministerial," because it involves

---

[30] *Phillips*, 496 S.W.3d at 770.

[31] TEX. CIV. PRAC. & REM. CODE § 103.052(a).

[32] *Phillips*, 496 S.W.3d at 772, 774.

[33] *Id.* at 772.

[34] *Id.* at 774-75.

[35] *Id.* at 775.

"law and arithmetic" and officials have "'no discretion or authority to misinterpret the law' or the rules of arithmetic."[36]

*Phillips* is distinguishable because, unlike the ministerial duty to calculate compensation, the Comptroller's ministerial duty to determine eligibility is specifically defined and conscribed by the Tim Cole Act.[37] Depending on the ground under which compensation is sought, the statute gives the Governor, the courts, and the prosecuting attorney the exclusive authority to issue qualifying documents and explicitly requires the Comptroller to take those documents at face value when they are verified.[38] This duty is "ministerial" because "the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion."[39]

The verified documents Brown submitted "clearly indicate on their face" that he is entitled to compensation because they are the type of documents that establish eligibility for compensation and they include all the elements Section 103.001(a)(2)(C) of the statute requires. The documents show that (1) Brown was incarcerated under the laws of this state; (2) he obtained habeas corpus relief; (3) the convicting state district court entered an order dismissing the charge for which he was convicted and sentenced; and (4) the state court's dismissal order was based on the state's

---

[36] *Id*. (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding)). Although the compensation calculation is statutorily committed to the Comptroller, error in determining the applicable legal and arithmetical principles would be subject to review by mandamus. *Id.* at 775. In *Phillips*, the compensation calculation involved only a determination of the applicable law plus an arithmetical calculation; we expressed uncertainty as to how the Comptroller would resolve any factual disputes or whether the Comptroller would have been bound by the arrearages judgment had she been a party to the enforcement proceeding. *Id.* at 775 n.23.

[37] TEX. CIV. PRAC. & REM. CODE § 103.051(b-1).

[38] *See id.* §§ 103.001(a) (compensation available based on an innocence-based full pardon, habeas relief based on actual innocence, or habeas relief based on other grounds plus the State's attorney's and trial judge's declarations of actual innocence), .051(a)(2) (required documents to make a compensation claim), .051(b) (Comptroller's duties to determine eligibility and compensation), .051(b-1) (method by which Comptroller may exercise the "purely ministerial" duty to determine eligibility).

[39] *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991).

attorney's motion to dismiss, which cited the absence of credible inculpating evidence and stated counsel's belief that Brown is actually innocent of the crime for which he was sentenced.[40] The verified documents, in form and word, meet every requirement in the statute.

The Comptroller's reliance on *In re Allen*[41] similarly falls short. That case does not, as the Comptroller suggests, authorize him to conduct an analysis to confirm the legal validity of verified court documents. *Allen* is a Tim Cole Act case that involved a claim of eligibility under Section 103.001(a)(2)(B), which authorizes compensation when habeas relief is itself granted on the basis of actual innocence.[42] At issue was the meaning of the term "actual innocence" as used in the Act.[43]

In *Allen*, we noted that two types of "actual innocence" claims are recognized under habeas law: (1) substantive claims asserting a "bare claim of innocence based solely on newly discovered evidence," known as *Herrera* claims, and (2) procedural claims involving constitutional error that "probably resulted in the conviction of one who was actually innocent," known as *Schlup* claims.[44] Despite the different standards, we held that both are compensable under the Tim Cole Act because "actual innocence" is an essential part of both *Herrera* and *Schlup* claims and the Act does not distinguish between types of "actual innocence" determinations.[45]

---

[40] *See* TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(C).

[41] 366 S.W.3d 696 (Tex. 2012) (orig. proceeding).

[42] *Id.* at 700; *see* TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(B).

[43] *See Allen*, 366 S.W.3d at 703.

[44] *Id.* at 700. After *Allen*, we recognized that "actual innocence" under the Tim Cole Act also includes a "'narrow class of cases' in which the petitioner's actions were not criminal at the time the acts were committed." *In re Lester*, 602 S.W.3d 469, 475 (Tex. 2020) (orig. proceeding).

[45] *Allen*, 366 S.W.3d at 707-08.

The CCA had granted Allen habeas relief under a *Schlup*-type claim that was intertwined with a claim for ineffective assistance of counsel.[46] A *Schlup* claim's more lenient standard avoids the "Herculean task" of obtaining habeas relief purely from new evidence that "unquestionably establish[es]" actual innocence.[47] The issue in *Allen* was not whether the CCA's habeas determination was correct, but whether *Schlup*-type actual-innocence claims are compensable under the Tim Cole Act. We held that they are, and most importantly, that "[t]he judgments of the criminal courts are taken as established" for purposes of evaluating a compensation claim under the Act.[48] We further held that, whether specifically stated or not, the CCA's habeas opinion clearly indicated on its face that habeas relief was based on the court's finding of actual innocence because "[a]ctual innocence [is] an essential part of the *Schlup* claim, [and] without the court finding actual innocence, the writ would [have been] denied."[49]

To be sure, the Comptroller had a duty to ensure habeas relief satisfied the statute's requirement that relief was in fact based on a finding of actual innocence. But in making that determination, the Comptroller was limited to what the habeas court said. It was essential for the Comptroller to understand that, under the law, a *Schlup* claim cannot be successful without a finding of actual innocence, but consulting the law to understand *the meaning* of the habeas decision did not equate to having authority to *independently determine* whether the CCA correctly made an actual-innocence determination. Here, as a factual matter, the district court issued an actual-innocence order, and the court could not have issued that order without first determining it

---

[46] *Id*. at 702.

[47] *Id*. at 704-05.

[48] *Id*. at 703, 707-08 ("Whether compensation may be awarded under the TCA depends, in the first instance, on determinations in the criminal courts of the merits of the applicant's conviction. The judgments of the criminal courts are taken as established for our purpose, and we thereafter apply the civil law component of the TCA.").

[49] *Id*. at 709.

had jurisdiction to do so. This is true not only because the district court's jurisdiction was raised and litigated in the criminal-court proceedings, but also because a court is obligated to determine its jurisdiction even when the parties have not challenged it.[50] The Tim Cole Act does not authorize the Comptroller to revisit that decision.

In that regard, the statutory scheme invokes a separation-of-powers construct that is similar in effect to one we considered in an election case involving a referendum petition. In *In re Woodfill*, we held that the city council's ministerial duty to act on a referendum petition did not permit it to independently evaluate the petition's validity.[51]

In *Woodfill*, City of Houston residents filed a referendum petition seeking to overturn a city ordinance.[52] The City Charter gave the city secretary the sole authority to certify the referendum petition, and once she did, the city council had a "ministerial duty" to choose between repealing the ordinance or placing it on the ballot for a popular vote.[53] Despite being duly certified, the city council rejected the petition on the basis that certain pages of the petition were invalid.[54] We held that the city council's ministerial duty was triggered by the city secretary's certification, and on the happening of that event, the council had "no discretion to reevaluate the petition[.]"[55]

---

[50] *See In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) (orig. proceeding) ("[A] court is duty-bound to determine its jurisdiction regardless of whether the parties have questioned it."); *cf. Allen*, 366 S.W.3d at 710 ("Even if a court does not explicitly state that its holding is based on actual innocence, implicitly the court must find that the applicant is actually innocent to grant relief on a *Schlup* claim.").

[51] 470 S.W.3d 473, 479-80 (Tex. 2015) (orig. proceeding).

[52] *Id*. at 475.

[53] *Id*. at 478-79.

[54] *Id*. at 477-78.

[55] *Id*. at 479.

15

We explained that if the city council "cannot independently evaluate the petition as a predicate to its ministerial duty to act, then it may not decide for itself that the petition is invalid[.]"[56]

Unlike the city council in *Woodfill*, the Comptroller is required to make an eligibility determination under the Tim Cole Act. But akin to *Woodfill*, there is a predicate to his "purely ministerial" duty that commits qualifying determinations to someone else.[57] Here, the district court had the authority, and the obligation, to evaluate its jurisdiction to issue a dismissal order. The statute does not charge the Comptroller with making or reviewing that determination.

The Comptroller describes the eligibility determination as a gatekeeping function that protects the public fisc from wrongful payments and argues that he must not only determine whether the application documents are the types of documents the statute requires but also whether those documents are legally valid. While the Legislature could have made such a policy choice, that is not the scheme the Legislature enacted. Instead, the Legislature erected stringent substantive and procedural hurdles to help protect the public purse while at the same time ensuring reparations are made to the wrongfully imprisoned. In that scheme, the judiciary is cast in the role of the gatekeeper,[58] and by requiring a finding of actual innocence, the Act ensures a claimant is "within the 'narrow class of cases' implicating a fundamental miscarriage of justice."[59]

---

[56] *Id*. at 480.

[57] *In re Allen*, 366 S.W.3d 696, 703 (Tex. 2012) (orig. proceeding) ("Whether compensation may be awarded under the TCA depends, in the first instance, on determinations in the criminal courts of the merits of the applicant's conviction. The judgments of the criminal courts are taken as established for [purposes of the Tim Cole Act].").

[58] In the case of a pardon, the Governor serves as gatekeeper. *See* Tex. Civ. Prac. & Rem. Code § 103.001(a)(2)(A).

[59] *Allen*, 366 S.W.3d at 709 (quoting *Ex parte Brooks*, 219 S.W.3d 396, 400 (Tex. Crim. App. 2007)).

The Tim Cole Act's administrative process for settling wrongful-imprisonment claims reflects a balancing of policy choices.[60] And in that balance, criminal courts are charged with determining their own jurisdiction to issue an actual-innocence order. When the judge of a proper court signs such an order, the statute requires the Comptroller to accept the court's legal and factual determinations. "The imperfection of humanity means that the state may make mistakes, but that possibility does not vitiate the government's interest in avoiding injustice."[61]

Under the statute as enacted, the Comptroller can determine only whether the required dismissal order has been issued, not whether it was correctly issued as a legal or factual matter. Whether this division of authority adequately protects the public fisc while serving the ends of justice requires a weighing of interests that is committed to the Legislature.[62] Our only objective is to ascertain legislative intent as expressed in the statutory language.[63] Affording the Act the meaning its language plainly dictates, the Comptroller exceeded his ministerial duty by looking beyond the verified documents to reverse the district court's determination that it had jurisdiction to clear Brown's name by amending the original dismissal order to declare him actually innocent.

## IV. Conclusion

Alfred Dewayne Brown's application checked all the statutory boxes, and as a purely ministerial matter, he is eligible for compensation under the Tim Cole Act. Having met the high

---

[60] The administrative remedy under the Tim Cole Act works to the exclusion of any other action "involving the same subject matter, including an action involving the person's arrest, conviction, or length of confinement," and in doing so, the Legislature has spared governmental units, governmental employees, and the wrongfully imprisoned the uncertainty and expense of litigation. *See* TEX. CIV. PRAC. & REM. CODE § 103.153.

[61] *Allen*, 366 S.W.3d at 707.

[62] *Id.* at 708 ("The role of the judicial branch in our government is important but that role 'is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent.'" (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003))).

[63] *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).

actual-innocence bar as determined by the district attorney and trial judge, the statute leaves to the Comptroller the limited and nondiscretionary task of ensuring the verified application documents facially comport with the statute. By considering matters beyond the verified documents to make a de novo jurisdictional determination, the Comptroller exceeded his authority. We direct the Comptroller to (1) withdraw his June 24, 2019 denial of Brown's application for compensation and subsequent denial of his application to cure and (2) compensate Brown for the time he was wrongfully imprisoned as required by the Tim Cole Act. We are confident the Comptroller will comply, and our writ will issue only if he does not.

_____
Eva M. Guzman
Justice


**Opinion Delivered:** December 18, 2020

18